The People of the State of Illinois, Appellee, v. William F. Bourlet, Appellant.

Gen. No. 64–15.

Third District.

November 2, 1964.

Gerald M. O'Connor, of Peoria, for appellant.

William G. Clark, Attorney General, of Springfield (James V. Cunningham, State's Attorney, of Peoria, Fred Leach and E. Michael O'Brien, Assistant Attorneys General, and Jay H. Janssen, Assistant State's Attorney, of counsel), for appellee.

ABRAHAMSON, P. J.

This action was brought by way of indictment for burglary admitted at the trial by the defendant. The

defense was that of insanity from which defendant has not entirely and permanently recovered. The case was tried by a jury and defendant found guilty. Following the entry of judgment on the verdict the defendant was sentenced for a term of five to eight years. This cause is before us pursuant to a transfer order of the Supreme Court.

The defendant, a police officer of the City of Peoria, on July 14, 1962, while on duty in a squad car patrolling, together with one Elmer G. Linden, Jr., a former police officer, burglarized a warehouse and shop building owned and occupied by the Board of Education of the City of Peoria in the early hours of the morning, taking from the premises a calculator, typewriters, projector and other articles. The stolen goods were removed from the premises by placing them in the squad car. A detail of the occurrence on the night of July 13 and the early hours of July 14 appears to be unnecessary in that the defendant admits the physical facts of the crime in question. Since one of the points urged in the plea of insanity is founded on a character change denoted by an addiction to alcoholic liquor it is interesting to note that the participants, according to the defendant, consumed three quarts of beer just prior to or during the occurrence. According to Linden they consumed three quarts of beer each.

Defendant's brief is primarily addressed to the contention that the state failed to establish that the defendant was sane at the time of the alleged crime. The brief is well prepared and is addressed to the elements and composition of the fundamentals of a psychiatric diagnosis and opinion. Defendant urges the court to examine the evidence adduced in accordance with this scientific approach to determine that the character and quality of the state's evidence did not meet the requirements of the law in proving that the defendant was sane beyond a reasonable doubt.

Dr. Emasue Snow, a qualified psychiatrist, testified on the defendant's case in chief that in her opinion the defendant was not able to determine right from wrong at the time of the burglary and was not able to act upon any choice as to right and wrong, which opinion conforms to the test expressed in People v. Carpenter, 11 Ill2d 60, 142 NE2d 11. The salient facts in the behavior pattern as the basis for determination are briefly summarized as follows: The abnormal reaction by the defendant upon his mother's death when he was seven years of age, one of anger that she had died and left him alone; loss of his father when he was eleven or twelve years of age; change in behavior pattern to and after January of 1957 upon the approach of fatherhood (his first child being born in March of 1957) when he was a kind person, good to his wife, went to church and was anxious to provide for his family; his subsequent activities by way of cruelty to his wife, morose periods, drinking at home, failure to attend church and purported sexual involvement with some thirteen women. In November of 1957 this behavior continued. Defendant's wife was pregnant with her second and last child. In October defendant was laid off from his full time employment and left his part time job and remained unemployed until February of 1958 when he became a police officer for the City of Peoria. He was critical of his fellow officers in that they were overimpressed with their authority and that they abused this authority; they were heartless and cruel persons and he found it difficult to deal with the general public and make arrests.

Dr. Snow concluded that the defendant had a severe propensity to mental illness during his early childhood and the distress which occurred upon the full impact of the pregnancy of his wife in January of 1957 brought about the symptoms of the illness which continued to show and impaired his ability to

function normally. The psychiatrist concluded that the defendant at the time of the burglary was presented with two choices: 1) That the burglary was wrong, and 2) to act as a policeman was cruel and sadistic and with his friend was also wrong. Because of this type of thinking he had only the opportunity to decide between the two courses of action, both of which were wrong. It was impossible for him to choose right or wrong with a healthy mental mind. In addition to Dr. Snow, defendant's aunt, Louise Bourlet, and his wife, Charlene Bourlet, testified to the background findings upon which the opinion of Dr. Snow was based.

The state presented rebuttal evidence of various officers on the police force of the City of Peoria who either supervised or worked with the defendant, or made progress reports of the defendant's ability, efficiency, and physical and personal qualifications, all of whom expressed the opinion that the defendant at the time of the occurrence was sane. These opinions were predicated upon their contact and association with the defendant from 1958 to July of 1962. In addition, Dr. Walter Baer, a qualified psychiatrist, made a general examination of the defendant before he was hired as a police officer in January of 1958 and testified that he did not find any evidence at that time of emotional stress. Progress reports on the efficiency, ability, personal and physical qualifications of the defendant as a police officer were admitted covering the period from July 3, 1958, to April 9, 1962.

All of the testimony of the fellow officers, supervisors and the psychiatrist, Dr. Baer, contradict the findings of Dr. Snow and the conclusions of the other defense witnesses.

The foregoing is a brief resume of the evidence adduced in the trial court and we conclude

440

this factual presentation is not of sufficient character as to persuade us that the defendant's mental capacity was substantially impaired July 14, 1962. Viewed in its entirety we cannot say this evidence is sufficient to require the defendant's discharge. The trial court properly submitted and permitted this issue to be concluded by the jury.

■ Defendant next urges that the instructions of the court prejudiciously misled the jury. People's instruction #6 as set forth in the abstract appears to be People's instruction #7 in the record and is complained of in that it instructs the jury that the intent alleged in the indictment is necessary to be proved, but such intent need not necessarily be proved by direct evidence. Defendant urges that this instruction in substance informs the jury in effect that sanity is not an issue in the case and disregards the plaintiff's burden to prove sanity beyond a reasonable doubt. In answer to this contention it appears to us that the trial court gave People's instruction #14 and Defendant's instruction #38 which adequately and clearly instructed the jury that upon presentation of an affirmative defense of insanity the burden of proof was upon the state to prove beyond a reasonable doubt that the Defendant was sane at the time of the commission of the crime.

■ Complaint is made of People's instruction #15 which is in the words of the statute defining insanity, Chapter 38, Illinois Revised Statutes, Sec 6–2. Defendant's proffered instruction #36 was refused. People's instruction #15 contained the complete section of the statute and defendant's proffered instruction #36 omitted the following: "The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated crime or otherwise antisocial conduct." It appears to us this paragraph is necessary and required to express the legislative intent in the foregoing section.

We have examined all of the instructions and we find that taken together they fairly state the law applicable to the case and are not open to the objection that they misled the jury.

The judgment of the trial court is affirmed.

Judgment affirmed.

CARROLL and MORAN, JJ., concur.