(No. 44075.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CLARENCE EUGENE WILSON, Appellant.

*Opinion filed March 21, 1972.*

KENNETH L. GILLIS, Illinois Defender Project, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and ROBERT W. WHITMER, State's Attorney, of Robinson (JAMES B. ZAGEL, Assistant Attorney General, and MARK WEBER, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendant, Clarence Eugene Wilson, was tried by a jury in the circuit court of Wayne County on a three-count indictment charging the offenses of murder, murder while attempting to commit burglary, and attempt to commit burglary. He was found guilty on all three counts, but was sentenced only on two counts: on the murder count and the conviction thereunder, to a term of from 50 to 75 years in the penitentiary, and on the attempted burglary count and conviction, to a term of from 10 to 12 years, the sentences to be served consecutively.

On appeal, the defendant contends (1) that he was denied a fair and impartial trial by the State's introduction of prejudicial references to the deceased's family and the prejudicial introduction into evidence of the defendant's prior convictions; (2) that the jury's verdict was improperly returned and therefore insufficient to support the

judgment of conviction; and (3) that the defendant was improperly sentenced.

The contention raised by the defendant which requires our most careful scrutiny is that he was denied a fair and impartial trial because of prejudicial testimony which referred to the deceased's surviving widow and children, his good standing in the community and his reputation as a sincere and conscientious police officer. Therefore, although the defendant has not urged that he was not proved guilty beyond a reasonable doubt, we believe it necessary to detail the evidence so that the testimony alleged to be prejudicial may be considered in the context of the facts of the case.

The defendant, Wilson, along with two other men named Sharp and Mitchell, agreed to burglarize the Big John Supermarket in the village of Oblong. A chicken wire cage, located at the rear of the supermarket, was apparently used for the purpose of storing empty soda bottles, and it was through the supermarket door to this cage that the defendant and his companions attempted to enter the store. While they were in the cage and in the process of gaining entry to the store, police officer Jack Fancil arrived at the scene and ordered them to come out of the cage. Sharp and Mitchell obeyed the officer's orders, came out and stood up against the wall of the building. Apparently, Wilson remained in the cage and as Officer Fancil approached the other two men, Wilson fired at him with a hand gun. The officer returned the fire and numerous shots were exchanged.

Two young men, who were in the squad car with Fancil previous to the shooting, testified that two men came out of the cage and stood up against the wall of the building; that the third man then came out of the cage and fired his weapon at Fancil, who was struck by one or more of the shots and fell to the ground fatally wounded; that they heard Fancil call for help and they radioed for help on the squad car's police radio; and that the man who fired

at Fancil started to run away, but fell down as though he had been struck by one of the shots fired by Fancil.

A witness, who lived across the street from the supermarket, testified that she was awakened by the shots and saw two men, one dragging the other, come across the street from the supermarket and go through her yard. Police officers who arrived at the scene in response to the call for help, saw Fancil lying on the ground not far from the cage. A satchel containing burglar tools was found inside the cage. The investigating officers were informed about the two men who crossed the street, and found the defendant lying in a barn lot across the street from the store. He had been wounded in the hip.

The defendant's companion, Sharp, testified that he was the one who helped the defendant across the street after he had been wounded, and that as he was helping him, the defendant threw down a flashlight and screwdriver; that the flashlight and screwdriver were thereafter found by another witness who lived in the area. The same witness also found the gun, which according to the testimony of the defendant's two companions, had been carried and fired by the defendant. The bullet which caused Fancil's death was shown by a ballistics test to have been fired by the gun carried by the defendant.

Sharp also testified that he had a gun in his possession on the evening of the offense, but had not fired it, and had so effectively hidden it in the woods while making his escape, that no one ever found it.

It is the defendant's initial contention that he was denied his right to a fair and impartial trial because of certain irrelevant and inflamatory testimony introduced into evidence by the prosecution. The officer's widow was not called to testify. However, early in the case, the prosecution called as a witness Robert Stewart, sheriff of Crawford County, who was involved in the investigation into Fancil's death. Sheriff Stewart had been acquainted with Fancil for many years and testified under interroga-

tion by the prosecution, that Fancil was approximately 25 years of age, was married, and had two young children; that he was a native of the area, a good police officer, and was sincere and conscientious about his duties; and that, in his opinion, Fancil was highly respected in the area in which he lived. No objection was made to any of this testimony. Further, the prosecution in final argument referred to the loss of Fancil, not only to his wife and his children, but also to the community in which he lived. Defense counsel made no objection to these remarks. While failure to object to the testimony of Sheriff Stewart and to the argument by the prosecutor normally waives the right to raise the point on review *(People v. Myers, 35 Ill.2d 311, 331, 334-335),* we will review the allegedly prejudicial testimony and argument to ascertain if it did deprive the defendant of a fair trial.

We have repeatedly condemned references by the prosecution to the surviving family of the deceased in murder cases, and the defendant contends that this issue is conclusively determined by our language in *People v. Bernette, 30 Ill.2d 359.* We stated there that the defendant's guilt must be established by legal and competent evidence, uninfluenced by bias or prejudice raised by irrelevant evidence, and where evidence that the deceased has left a spouse and family is presented in such a manner as to cause the jury to believe it is material, its admission is highly prejudicial and constitutes reversible error unless an objection thereto is sustained and the jury instructed to disregard such evidence. We also held that argument by the prosecutor which dwells upon the decedent's family, or seeks to relate a defendant's punishment to the existence of his family, is inflammatory and improper.

In *Bernette,* the widow of the murder victim was called as a witness, and the prosecutor, without objection by the defense, elicited answers from her concerning the surviving family of the deceased. During final argument to the jury, the prosecutor commented upon this circum-

stance. It is obvious that the testimony of the widow, which had no relevance to the guilt or innocence of the accused, and the remarks of the prosecutor, were prejudicial to the defendant in the eyes of the jury.

Since *Bernette,* we have held that every mention of a deceased's family does not necessarily, in and of itself, entitle the defendant to a new trial; since, in certain instances, dependent upon the factual circumstances, such evidence and argument can be harmless, particularly when the death penalty is not imposed. *(People v. Jordan, 38 Ill.2d 83, 91-92.)* In *Bernette,* the jury imposed the death penalty against the defendant, but the jury did not do so in *Jordan.*

In *People v. Gregory, 22 Ill.2d 601,* the sentence imposed upon the defendant was unusually severe—199 years—and we there reversed because of the combination of an improperly admitted confession containing references to the commission of other crimes, and the highly inflammatory argument of the prosecutor referring to the deceased's widow and children. We there held that in any case wherein the jury fixes the punishment, substantial and equal justice requires that the jury make its determination without the influence of improper argument.

In *Gregory* and *Bernette,* the assumption that the jury's judgment was influenced by the irrelevant and inflammatory material is almost inescapable. Although the defendant in any case is entitled to have both his guilt or innocence and his punishment determined free from any inflammatory and prejudicial evidence or argument, the effect of the improper evidence and argument in the instant case is not apparent. The evidence concerning the deceased's family and his standing in the community was more incidental than calculated, and it was not presented in such manner as to cause the jury to believe it to be material. The reference to these circumstances in the argument was not made in an effort to relate to the defendant's punishment. In this case, the sufficiency of the

evidence is not challenged, and it appears impossible to reasonably anticipate any different result in the event of a retrial, even if such retrial were totally free from any improper evidence and argument by the prosecutor.

Were there any question as to the sufficiency of the evidence against the defendant, we would be compelled to rule otherwise. However, although we cannot condemn too strongly use of this type of evidence or remarks of this character by the prosecutor, we are not required to reverse the defendant's conviction, in that the evidence of guilt against him is so overwhelming and unquestioned that it appears impossible to reasonably anticipate any different result upon retrial.

We believe it clear beyond a reasonable doubt that the defendant is guilty as charged; that the errors in question did not contribute to the guilty verdict and they were harmless; and that public policy reasons—the balancing of the desirability of affirming the conviction of an obviously guilty defendant against the danger of deteriorating our procedural safeguards by ignoring their breach—do not require a reversal because of these errors.

In the instant case, the defendant did not testify and he here contends that evidence of his prior conviction was erroneously admitted against him. His co-defendant, Mitchell, testified for the prosecution, and in response to questions about conversations with the defendant and the other co-defendant, responded that there was some conversation about the defendant having a record in California and having been in the penitentiary. Defense counsel objected to this testimony and the matter was taken up outside the presence of the jury. After conference with counsel, the trial judge had the court reporter read back to the jury the question which elicited the objectionable response and instructed the jury specifically to disregard the answer that had been given to that question. No further references to any past criminal record of the defendant were thereafter made during the trial. This

testimony of unrelated crimes was improper and constituted error. However, such error does not require reversal in that the trial court properly instructed the jury to disregard the answer.

At the close of all of the evidence, the jury was furnished with three sets of verdict forms, one set for each of the three counts of the indictment, and retired to deliberate its verdict. After finishing its deliberations, the jury returned into open court only one signed verdict. The trial judge refused to accept the one signed verdict, immediately informed the jurors that they should have returned a verdict of either guilty or not guilty on each of the three counts, and instructed the jury to return to the jury room and affix signatures to the unsigned verdicts. The record does not disclose which of the three verdicts was signed when the jury initially returned to the courtroom.

After the three signed verdicts were returned, each member of the jury was polled and responded that the three verdicts which were returned against the defendant were, in fact, the correct verdicts of the jury. The defendant urges that the failure of the jury to sign more than one verdict when it initially returned into court, works as an acquittal on two of the three counts of the indictment, and that we must, in fairness to him, assume that the one verdict which was signed could properly convict him of only attempted burglary, the least serious of the three counts.

The finding of a jury does not become a verdict until it has been received, accepted by the court and entered of record. *(People v. Arnett, 408 Ill. 164, 171; Schmidt v. Chicago City Ry. Co., 239 Ill. 494, 500-501.)* In *People v. Arnett,* the jurors returned to the courtroom after signing the instruction sheet which contained the court-given form of verdict to be used in the event the jury found the defendant not guilty, instead of writing their verdict on the form which was imprinted on a separate

sheet of paper provided for that purpose and on which they had been instructed to return their verdict. The trial judge then asked the foreman of the jury whether they had found the defendant guilty or not guilty and was told that they had found him guilty. The judge then told the jurors that it was necessary that they write their verdict on the separate sheet of paper provided for that purpose as he had previously instructed them and ordered them to retire to the jury room and affix their signatures to the appropriate paper. The jurors did so, re-entered the courtroom and returned their verdict, properly signed, finding the defendant guilty. The verdict was then read and the jurors, when polled by the clerk, each responded that it was their verdict. We there held that it was not error to permit the jury to retire and amend its verdict by putting it in proper form and we so hold in the case now under consideration.

The defendant finally contends that he should not have been sentenced consecutively on the two separate counts and urges that *People v. Stingley, 414 Ill. 398,* sustains his contention. We there held that sentences for assault with intent to commit rape and assault with intent to commit murder, both charged in one indictment and arising out of the same transaction, can uphold only concurrent sentences.

We reached a similar result in *People v. Whittington, 46 Ill.2d 405,* and held that separate sentences for escape and theft were improper where the defendant, an inmate, had escaped from the penitentiary by the use of an automobile stolen on the penitentiary grounds, and in *People v. Stewart, 45 Ill.2d 310,* a case in which separate sentences were imposed for aggravated battery and attempted robbery, where the defendant grabbed the complaining witness, demanded his money, threw him down, struck him, and thereby knocked out several teeth.

The facts in the instant case make it easily distinguishable from the circumstances in the cited cases. Here the acts and mental state which constituted attempted burg-

lary and murder were independent and the conduct which constituted each offense was separable.

Consequently, the separate and consecutive sentences were proper. The two offenses, independently motivated or otherwise separable, formed the converse of the situation found in *People v. Whittington, 46 Ill.2d 405.* Obviously, the offenses of attempting to commit the burglary and of murder, of which the defendant was convicted, did not result from the same conduct or mental state. See: Ill.Rev.Stat. 1969, ch. 38, par. 1—7(m).

Under the circumstances of this case, we regard the errors complained of as harmless and, in the light of the overwhelming evidence of the defendant's guilt, they do not require a reversal of the conviction. Accordingly, the judgment of conviction of the circuit court of Wayne County is affirmed.

*Judgments affirmed.*