THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THURMAN STEPHENS, JR., Defendant-Appellant.

(No. 72-51;

Second District—June 6, 1973.

Paul Bradley, of Defender Project, of Elgin, (Kenneth L. Gillis, of counsel,) for appellant.

William R. Ketcham, State's Attorney, of Geneva, (W. Ben Morgan, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

A jury found defendant, Thurman Stephens, Jr., guilty of armed robbery; he was sentenced to serve 8 to 12 years in the penitentiary. Two co-defendants were tried separately, found guilty, and their convictions affirmed by this court. See, *People v. Iverson,* 9 Ill.App.3d 706 (1973), and *People v. Friday* (1973), 11 Ill.App.3d 1071.

Three issues are raised: (1) The search warrant was issued without probable cause and was improperly executed by the issuing magistrate; (2) the interrogation of a defense witness by the trial judge constituted error; and (3) the court erred in allowing the introduction of certain evidence.

■■■ The complaint for a search warrant, signed on January 21, 1971, by a police sergeant, stated:

"On January 9, 1971, four persons forced their way into the home of Mr. & Mrs. Jos. Garcia, 473 South St. Elgin, Kane County, Illinois; by threatening the four occupants of the home with guns, they took the above described property from the said occupants and fled the scene; Robert Soule has admitted participating in the robbery, and has implicated Thurman Stephens of above address, by stating that Stephens was one of the robbery participants, and

that further that the property taken from the Garcia home was divided at the Stephens residence above described; Stephens is reported to have received over $20,000.00 as his share plus various items of personal property as described above; Stephens is known to the undersigned as having spent large sums of cash at Zimmerman Ford; and is reported to have purchased many items of personal property, said report being made by Robert Soule."

Defendant made pretrial motions to quash the warrant and to suppress articles seized. The motion to quash was denied and the motion to suppress, allowed, except as pertinent to a pair of cufflinks and certain currency and coins.

Defendant contends the warrant should have been quashed, arguing that if the informant, Soule, had observed the proceeds of the robbery in defendant's apartment on January 9th, it was unreasonable to believe that the proceeds would still be there 12 days later, on January 21st, the date of the complaint.

No fixed rule sets forth the time within which a complaint for a search warrant must be made; the time should not be remote, but what constitutes "remoteness" must be decided on the basis of the individual case. (*People v. Montgomery*, 27 Ill.2d 404, 405 (1963); *People v. Dolgin*, 415 Ill. 434, 441-442 (1953).) The robbery proceeds observed by Soule in defendant's apartment created sufficient probable cause and we hold that the 12 day interval was not so remote as to override the reasonable belief that some of the proceeds were present on the premises at the time the warrant issued.

■■ It is further argued that the warrant was invalid because the signature of the issuing magistrate was stamped rather than written. The trial judge overruled this contention by taking judicial notice of the magistrate's poor eyesight, his practice, for many years, of using a signature stamp in execution of his judicial duties, and the exclusive retention of the stamp in his personal possession. Defendant contends that the court erred in taking judicial notice of facts "not known to everyone to be true." From this base he claims that, having established the fact that the magistrate's signature was executed by means of a stamp, it became the State's burden to prove its authenticity. On this type of motion, the burden of proof rests upon the defendant. (Ill. Rev. Stat. 1969, ch. 38, sec. 114—12(b).) It is the intent of the person executing his signature, not the manner by which it is executed, which determines the signature's validity. "A 'signature' may be written by hand, printed, stamped, typewritten, engraved, photographed or cut from one instrument and attached to another * * *." (Black's Law Dictionary, 4th

ed. p. 1553.) Here, without further evidence to show that the signature was not the intended act of the magistrate, the single fact that the signature was stamped was insufficient to shift the burden to the State or to overcome the presumed validity of the signature. We find that, under the circumstances, the warrant was legally executed.

At trial, the State established, through Soule, that the defendant was one of four who participated in the robbery and that the proceeds were thereafter divided at the defendant's apartment. Defendant relied upon an alibi, testifying that at the time of the robbery, he, his girlfriend, his wife (from whom he was separated), and another woman were at his apartment; that Soule came to the apartment at about midnight and attempted to hand him a package to hold; that he was in the midst of a family "squabble" and didn't take the package; that later he was aroused from bed by Soule who asked him to hold the package "to give to Ollie Burns the next day"; that when Soule left, defendant opened the package and found $5300; that the next day he used the money to buy a car, a television set and various other items. Defendant volunteered that he and Burns had, on quite a few other occasions, spent each other's money.

In support of the alibi, defendant's wife testified that he was indebted to her in the sum of $2500; that on the night of the crime, she was with the defendant in his apartment having come from Benton Harbor, Michigan, to discuss the repayment of the money due her. During testimony, she indicated that she did not know whether the defendant was employed at the time of her visit. At the conclusion of her examination, the court inquired:

"Q. Did you come down here on January 8th, 9th and 10th to get the $2,500 he owed you?

A. The 8th, 9th and 10th?

Q. Of January?

A. No, I didn't.

Q. That was your testimony that was the purpose of your trip from Benton Harbor?

A. To come down, yes, I did.

Q. Now, your testimony here is that you didn't know whether or not he was working in January?

A. I knew he was working. I also know that he lost his job in January.

Q. You just answered Mr. Dondanville that you did not know if he was working in January?

A. I know he was working the beginning of January. I don't know when his job terminated.

Q. Was he working when you came down to get the $2,500?

A. I don't know.

Q. You came to get money. Didn't you discuss whether he was employed?

A. I don't know."

At this point, defense counsel requested to be heard outside the presence of the jury and there made a motion for a mistrial claiming that the court's interrogation of the defendant's wife, an attack on the witness' credibility, was error. Defendant further requested that the court immediately instruct the jury that, by his remarks or questions, he had expressed no opinion as to the veracity or the credibility of any witness and did not mean to imply that he either believed or disbelieved the witness' testimony.

Prior to ruling on the requests of defendant, the court stated:

"Her manner on the stand to me has been suggestive of evasion, particularly about this money when she answered Mr. Dondanville that she did not know whether or not this man was working. I actually wanted to know why because this was by her testimony, the entire purport of her trip from Benton Harbor on that occasion was to get money. Then she testified she didn't know whether or not the man was even working. It is the credibility I am looking at. The Court wants the record to show that."

The court further explained that defense counsel had misread his tone of voice and his questions, and therefore denied the motion for mistrial and declined to give an instruction to the jury at that stage of the proceedings.

■■ The trial judge must not, directly or indirectly, convey to the jury his personal belief as to the credibility of witnesses. Determination of the credibility of witnesses is the function of the jury and any indication of disbelief on the part of the trial judge is apt to influence their verdict. This does not mean that a trial judge may not ask questions for the purpose of eliciting the truth but, in so doing, he must conduct himself so as not to give the jury an impression of his feelings. *People v. Santucci*, 24 Ill.2d 93, 98-99 (1962); *People v. Marino*, 414 Ill. 445, 450-451 (1953).

The State poses that the court's interrogation of the alibi witness was permissible in order to elicit the truth and, further, that when instructions were given to the jury, the first was to the effect that any remark by the court was not intended to indicate any opinion as to either the facts or what the verdict should be.

■■ It was incumbent upon the court to refrain from casting discredit upon defendant's wife's testimony, *People v. Santucci, supra,* p. 99. The court's interrogation went beyond the realm of eliciting the truth of her former testimony and was of a nature which tended to discredit her.

This type of questioning is best left to the prosecution. We find this to be error and our finding is supported by the judge's statements in chambers, candidly admitting that he was looking at the witness' credibility—a proper function of the jury.

██ Made a part of the search warrant was an inventory prepared by one of the victims; included thereon was "1 pair man's cufflinks (bloodstone)". At trial, this same victim, shown a set of cufflinks taken in the search, testified that while these were not the set described in the inventory, they were another pair taken in the robbery, but never listed. Soule, during cross-examination, testified that the cufflinks shown to him for identification were not those he had seen on the night of the robbery. The defendant, claiming never to have seen the cufflinks prior to trial, moved to suppress their introduction into evidence and to strike all reference thereto. This motion was denied and the cufflinks admitted. The testimony of the State's witnesses definitely established that these were not the cufflinks described in the search warrant. Therefore, the cufflinks were illegally seized and it was error for the trial court to deny defendant's motion to suppress.

██ Having found error both in the trial court's interrogation of one alibi witness and in the improper allowance of the cufflinks into evidence, we must determine whether the errors, taken together, were of such a nature as to require a reversal or whether they were harmless. To determine them to be harmless, it is necessary, based upon the facts and circumstances disclosed by the record, to believe that they were harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 17 L.Ed.2d 705, 710-711, 87 S.Ct. 824 (1967); *Harrington v. California*, 395 U.S. 250, 23 L.Ed.2d 284, 287-288, 89 S.Ct. 1726 (1969); *Chambers v. Maroney*, 399 U.S. 42, 26 L.Ed.2d 419, 429, 90 S.Ct. 1975 (1970).

A review of the record discloses that the State's witness, codefendant Soule, had previously pled guilty on the condition that the State would recommend a sentence of from 2 to 5 years in return for his testimony against the other defendants involved. He named the defendant as a participant, also stating that it was the defendant who had supplied the information on the location of the home, its occupants and the telephone wire layout. His testimony was detailed, unshaken on cross-examination and corroborated in part by two of the victims who testified that during the course of the robbery, one of the participants was referred to as "Steve" or "Stephens". As stated in the case of *People v. Iverson, supra,* and applicable to the instant case, Soule's testimony was positive, credible and without motive to implicate the defendant.

To be weighed against this is defendant's testimony disclaiming par-

ticipation, his explanation for his sudden wealth ($5300, most of which was spent the following day) and his claimed justification in spending it.

We conclude that the errors found herein had no prejudicial impact upon the jury nor did they contribute to the jury's finding of guilt. We believe, therefore, that the errors were harmless beyond a reasonable doubt. *Harrington v. California, supra; People v. Wilson*, 51 Ill.2d 302, 307-308 (1972).

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.