THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDRE P. WOODS, Defendant-Appellant.

Fifth District No. 76-176

Opinion filed July 5, 1978.

Michael J. Rosborough and Randy E. Blue, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant, Andre P. Woods, was indicted for the offenses of attempt (murder) and attempt (armed robbery). Following a jury trial in the circuit court of St. Clair County, the jury returned guilty verdicts on both charges. The court imposed sentence solely upon the attempt (murder) verdict, the sentence being a penitentiary term of from four to 10 years.

The defendant raises the following issue on appeal: whether the trial

court erred in not reversing the attempt (murder) conviction when it specifically found that the evidence proved that the defendant did not fire the shot.

Also in this appeal, the State argues that we must remand this cause to the trial court for the imposition of a judgment and sentence upon the jury's verdict of guilty of the attempt (armed robbery) offense.

This cause involves an incident which occurred at the Vaughn Service Station in Washington Park, Illinois, on August 28, 1975. Two extremely different versions emerged from the testimony of the State's witnesses and the defendant.

According to the testimony of State's witnesses Thomas Angle, Tim Vaughn, and Daniel Vaughn, employees at the station owned by Ray Vaughn, the defendant entered the office area of the station at approximately 2:50 p.m. He thereafter pulled out a small caliber gun and said, "You know what it is, motherfuckers. Hit the floor." The gun was positively identified as People's Exhibit No. 6, a .25 caliber Colt automatic. When Dan Vaughn took longer to get onto the floor than the others, the defendant struck him on the head with his gun, causing him to bleed. At this point, the defendant became aware of the fact that Ray Vaughn was working in the garage area. He then went into that area. After he did so, Tim and Dan armed themselves with handguns which were kept in the office. Tim got a .25 caliber pistol and Dan, a .38 caliber revolver. Tom Angle left the station to summon the police, and Tim and Dan entered the garage area. Dan was in the lead by about 10 feet as they approached the rear of the garage where a scuffle was in progress in the storage room between the defendant and Ray Vaughn.

The defendant and Vaughn emerged from the room. Mr. Vaughn had a hold upon defendant which pinioned defendant on his back but left the defendant's hands free. The defendant, still wielding his handgun, shouted at Dan either, "Drop your gun or I will kill him" or "I'm going to kill him." Tim and Dan heard a shot from defendant's gun. Ray Vaughn exclaimed that he had been shot and stumbled to the ground. The Vaughns then opened fire on defendant. Tim's gun jammed after one shot, but Dan believed he fired all five shots which his revolver held.

The defendant was wounded and collapsed to the floor. Since he still held his gun, Ray Vaughn, who was also on the floor, grabbed a nearby hammer and struck defendant until Dan was able to take his gun away and place it on a workbench. The police arrived shortly thereafter.

According to the defendant, while hitchhiking he was let off near the Vaughn station. He went in and asked to see the proprietor. Ray Vaughn, who was working in the garage area, was pointed out to him. He went in and inquired about a job. Mr. Vaughn told him that he did not hire Negroes and an argument developed. After Vaughn apparently noticed

the imprint of defendant's gun in his shirt pocket, he called out to his son that the defendant was armed. One of the sons came in firing on defendant, wounding him in four places.

Defendant admitted that at the time he was carrying a .25 caliber automatic pistol loaded with two or three bullets but testified that there was no bullet in the chamber and that he never fired the gun at the station. He explained that he had been carrying the gun for about a week because someone had been tampering with his car by loosening the lug nuts on his tires.

Detective Sergeant John Herndon of the Washington Park Police department testified that the defendant's gun was turned over to him by Chief Louis Oliver at the scene of the crime. He removed the clip and found two live rounds of ammunition in it. The weapon was safe at that time since there was no live round in the gun's chamber. On cross-examination, the detective testified that if such an automatic were operating in the proper mechanical fashion, a live round would be automatically transferred from the clip to the chamber after the gun was fired. However, it would not be unusual for the next bullet to have jammed in the clip since such a malfunction frequently occurs in such weapons.

State Police Detective Gerald Johnson testified that he did not examine the defendant's gun at the service station; however, about one month later he performed a test to determine if the gun would fire. He did not perform a test to determine if the gun had been recently fired, and to his knowledge such a test was never performed by anyone. The gun did not have a clip in it when he received it. He loaded a clip with three bullets and tested it. It functioned properly all three times. He further testified that he had been informed by the Washington Park Police that two bullets were found in the clip of defendant's gun. He had no knowledge whether a bullet was found in its chamber.

The approach of the defendant with respect to his sufficiency of the evidence issue is somewhat unique. He seeks only alternatively to have us assess in the customary manner whether the evidence proved him guilty of attempt (murder) beyond a reasonable doubt. He primarily seeks a declaration that a trial court has the inherent power to enter a judgment notwithstanding the verdict in criminal cases and a finding that the court's failure to enter a judgment of acquittal *n.o.v.* in the instant case was reversible error.

Defendant argues that the trial court made a specific determination that the defendant did not fire his gun and that it was therefore incumbent upon it to set aside the verdict and enter a judgment of acquittal.

During the hearing on defendant's post-trial motion the court made, *inter alia,* the following comments:

"* * * Mr. Hay, [defense attorney] I have to think you have got a fair trial. There were three eye witnesses.

* * *

I am not considering what happen [*sic*] to the bullet at all. *The testimony showed the gun for all ostensible purposes was not fired. There were two cartridges in the automatic. If fired, one would be up in the chamber ready to be fired again.* I am not taking that into consideration at all. I recall this case very well. This is the case where he started out for just a walk through the pleasant surroundings of East St. Louis and decided to go in and ask for a job. Then I heard what happened from the witness stand here. I heard that too, so I think that there was a fair and impartial trial * * * Your Post Trial Motion for a new trial, will be denied."

The italicised portion of the above comments is what defendant represents as the court's determination that he did not fire his gun. We cannot agree with the defendant's interpretation. The court made no finding that the defendant did not shoot Ray Vaughn and we therefore need not address the issue concerning the judgment notwithstanding the verdict, but only decide whether defendant was proved guilty beyond a reasonable doubt.

The court's very use of the term "ostensible" implies that the outward appearance may be contrary to actuality and dissipated upon close scrutiny or consideration of all the facts. When regard is given to all of the judge's comments, especially his references to the eyewitnesses' testimony, we can only conclude that the court was noting that there were apparent conflicts in the evidence which were neither fatal nor required to be resolved in the defendant's favor, contrary to the jury's verdict. With this assessment of the evidence we agree.

■■ It is fundamental that when a defendant has been found guilty of an offense, this court will not reverse the conviction unless the evidence is so palpably contrary to the verdict or so improbable, unreasonable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. (*People v. Tate*, 63 Ill. 2d 105, 345 N.E.2d 480; *People v. McDonald*, 62 Ill. 2d 448, 343 N.E.2d 489.) Tested under this standard, the evidence here was clearly sufficient to support a conviction for attempt (murder).

■■ The jury was free to accept the testimony of the State's witnesses rather than that of the defendant as the true account of the incident. It was its function to weigh testimony, judge the credibility of the witnesses and determine all factual matters. *People v. Akis*, 63 Ill. 2d 296, 347 N.E.2d 733.

Both of Ray Vaughn's sons, Tim and Dan, testified that the defendant shot first and that they heard their father exclaim that he was shot and saw him fall down before they commenced firing at the defendant. In

addition, Tim stated that he could see that the defendant's gun was in his father's back before it was fired.

The victim, Ray Vaughn, was equally certain that the first shot which was fired came from defendant's gun. He was certain because he could feel the gun in his back, and also feel the bullet tear into his back "like a hot iron going through."

The crux of defendant's argument is that the evidence relating to defendant's gun created a reasonable doubt of defendant's guilt even in the face of the positive eyewitness testimony. We do not agree.

Whereas the testimony of Detective Herndon that there was no bullet in the gun's chamber when he examined it at the scene is apparently inconsistent with the testimony of the three Vaughns, it does not necessarily establish that their testimony was not correct. For instance, there are several possible explanations, suggested by the record, which could make the evidence totally consistent.

First, Detective Herndon testified that guns of this type often fail to move a bullet from the clip to the chamber after being fired. Such a malfunction could have occurred on the day in question. The later testing of Detective Johnson does not rule out such a possibility since he had to reload three new bullets into an empty clip before testing the gun. Second, there is a possibility that Chief Oliver removed the bullet from the chamber to make it safe prior to turning the gun over to Detective Herndon. In view of these reasonable explanations, we would be unwarranted in reversing a conviction supported by the positive testimony of two eyewitnesses and the victim.

The State argues that under the authority of *People v. Scott*, 69 Ill. 2d 85, 370 N.E.2d 540, and *People v. Griffin* (5th Dist. 1977), 56 Ill. App. 3d 255, 371 N.E.2d 1160, the instant cause should be remanded to the trial court for the imposition of sentence upon the attempt (armed robbery) verdict.

In *People v. Scott*, the defendant had been found guilty on two counts of armed robbery and one count each of rape, aggravated battery and aggravated kidnapping. He was sentenced to concurrent prison terms on all the offenses but aggravated kidnapping. Holding that the conviction for aggravated kidnapping "would merge into the rape count," the trial court imposed no sentence for that conviction. The appellate court remanded the cause for entry of a sentence on the aggravated kidnapping conviction, and our supreme court allowed defendant's petition for leave to appeal from the decision.

Our supreme court found that the appellate court's order did not expand the People's right to appeal, did not exceed that court's powers, and did not increase the defendant's punishment. In deciding the case, the court stated:

"We need not and do not decide the question whether absent an appeal by defendant the People could have sought review of the order "merging" the aggravated kidnapping conviction and the failure to impose sentence on that count. On this record the question presented is whether, having before it the defendant's appeal seeking reversal of the conviction for aggravated kidnapping, the appellate court was empowered to remand the cause for imposition of sentence. * * * Following *Lilly* [*People v. Lilly*, 56 Ill. 2d 493, 309 N.E.2d 1], we hold that in remanding the cause to the circuit court for entry of a sentence on the aggravated kidnapping conviction the appellate court acted within the scope of its powers." (69 Ill. 2d 85, 87-88, 370 N.E.2d 540, 542.)

The court further noted that "[t]he effect of the remanding order for the imposition of sentence is to complete the circuit court's order and render the judgment final." 69 Ill. 2d 85, 89, 370 N.E.2d 540, 542.

In *People v. Griffin*, the defendant had been found guilty of voluntary manslaughter in the deaths of two victims; however, the trial court entered a sentence on one count only. The defendant thereafter appealed to this court seeking, in part, the removal of all references of record as to his manslaughter conviction upon which no sentence was imposed.

This court, following *Scott*, repudiated a former decision (*People v. Akins*, 43 Ill. App. 3d 943, 358 N.E.2d 3) and remanded the cause for entry of a sentence upon the other voluntary manslaughter conviction.

The defendant here raises a series of objections to a *Scott* disposition which we shall comment upon one by one.

Defendant first argues that the trial judge did not enter a judgment on the jury's finding of guilt on the attempt (armed robbery) offense and therefore there exists no "verdict" or conviction for that offense (*People v. Wilson*, 51 Ill. 2d 302, 281 N.E.2d 626) upon which to impose a sentence. We disagree.

■■ As stated in *Wilson*, "The finding of a jury does not become a verdict until it has been received, accepted by the court and entered of record." (51 Ill. 2d 302, 309, 281 N.E.2d 626, 630.) The instant record shows sufficient evidence of an acceptance and recordation in the docket minutes for December 16, 1975, where after reciting the jury's verdicts the following entry was made, "Enter judgment on the verdict [*sic*]." Under very similar facts, this court held in *Griffin* that there existed a judgment of record on a count of voluntary manslaughter although there was no final or completed judgment because of the trial court's failure to enter a sentence thereon. 56 Ill. App. 3d 255, 257, 371 N.E.2d 1160, 1161-62.

■■ Defendant next contends that *Scott* is inapplicable to the facts of this case because he has not challenged the propriety of the attempt (armed

robbery) conviction. Although it is true that both in *Scott* and *Griffin* the defendant was seeking some sort of relief with respect to the conviction that the reviewing court remanded for entry of a sentence upon, we do not believe that this court's authority under Supreme Court Rule 366(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)) to remand a cause for the imposition of a sentence so as to complete the circuit court's order and render the judgment final may be stripped of it merely by the defendant's careful avoidance of any issue as to the incomplete conviction. The existence of an appeal rather than the issues raised by the appellant is the paramount element in triggering our power to remand the cause for completion of the trial court's order. (*People v. Dean*, 61 Ill. App. 3d 612, 378 N.E.2d 248; see also *People v. Lilly*, 56 Ill. 2d 493, 496, 309 N.E.2d 1, 2, where the supreme court held it had authority to vacate an incomplete judgment on an indecent liberties verdict by virtue of the fact that it had the cause properly before it to review defendant's claim as to his rape conviction; see also the passage from *Scott* set out above.) Moreover, we note that the defendant indicated in his notice of appeal that he was appealing a judgment of guilty on one count of attempt (armed robbery) and one count of attempt (murder), thus conferring us jurisdiction as to both counts. See Supreme Court Rule 606(a), Ill. Rev. Stat. 1977, ch. 110A, par. 606(a).

Defendant next contends that *Scott* is inapplicable since it did not hold that a reviewing court can require a trial court which intentionally declined to impose a sentence on one of two convictions to impose a sentence when there are no other erroneous assumptions applied in the sentencing proceedings. See *People v. Dean*, holding that a trial court lacks authority to fail to impose any sentence on a properly entered judgment of conviction.

■■ This argument is inapplicable to the case at bar since the comments of the court clearly imply that he did not impose a sentence on the attempt (armed robbery) conviction since it was a less serious offense arising out of the same general transaction. Such sentencing assumption was incorrect. Under the rule of *People v. King*, 66 Ill. 2d 551, 565, 363 N.E.2d 838, 845, it is clear that concurrent sentences were proper since these offenses are clearly not lesser included offenses. Moreover, if a substantial change in the nature of defendant's criminal objective occurred prior to his shooting Ray Vaughn, consecutive sentences were proper. Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(a); *People v. King*.

Defendant finally argues that to allow the State to seek a sentencing remand is to threaten the defendant with the imposition of additional penalties for taking an appeal. The supreme court confronted this issue in *Scott* and found it without merit. We must do likewise.

684

For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County and remand this cause to that court for entry of a sentence on the conviction of attempt (armed robbery).

Affirmed and remanded.

G. J. MORAN and WINELAND, JJ., concur.