The People of the State of Illinois, Plaintiff-Appellant, *v.* William Schoeneck *et al.,* Defendants-Appellees.

(Nos. 70-108, 70-128 cons.; ▮▮▮▮▮▮▮▮▮▮▮▮▮

Second District—September 17, 1971.

*Rehearing denied November 11, 1971.*

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

William V. Hopf, State's Attorney, of Wheaton, (Ralph J. Gust, Jr., and Malcolm F. Smith, Assistant State's Attorneys, of counsel,) for the People.

Kevin P. Connelly, Frank Wesolowski, Jr., Public Defender, and Robert H. Heise, all of Wheaton, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

The People of the State of Illinois bring this appeal of two orders of the Circuit Court of the 18th Judicial Circuit, DuPage County, which are here consolidated.

Two questions are raised: (1) whether statements of defendants were properly suppressed by the trial court; and (2) whether the defendants, who had been incarcerated for a period of more than 120 days, were properly discharged under the statutory provision for speedy trial. Ill. Rev. Stat. 1969, ch. 38, par. 103—5.

We consider first suppression of the statements. The two defendants, Schoeneck aged seventeen years, Robbins aged sixteen years, and a third defendant named James Fiene, were arrested in the Fiene residence by four police officers of the City of Elmhurst about 8:30 in the morning on August 30, 1969, the Saturday of Labor Day weekend. The youths were handcuffed and taken to the Elmhurst police station. During the course of the day, from about 9:00 o'clock that morning until the early evening they were variously interrogated by two other Elmhurst police officers.

During the early afternoon a complaining witness was present in the police station for the purpose of viewing the defendants through a one-way glass. In the course of a hearing on defendants' motions to suppress line-up identification, the witness testified he looked into a room containing only the defendants and saw someone else come in whom he did not know. There was testimony that an officer about ten years older than defendants was present in the room with them when defendants were viewed by the witness, and that although the officer was similarly clothed he was clean and well groomed in contrast to the disheveled appearance of defendants. Although the issue of line-up identification is not before us as the State agreed to its suppression by stipulation, a police officer told defendants, after the viewing, that they might as well confess as they had been identified, and one defendant was told that the other had confessed.

The arresting officers who allegedly advised the defendants of their rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, did not testify at the hearing on suppression of the confessions. Two officers who were present in the police station, but not at the arrest, did testify and made various references to advice of rights given to defendants by the arresting officers. This testimony is conclusional, obviously hearsay, and denied in substance by defendants. These interrogating officers variously stated that during the course of the day they warned the defendants of their rights but the testimony is not persuasive that adequate warnings were given. The challenged confessions were obtained at approximately 7:00 o'clock in the evening. The following colloquy is an example of one officer's testimony in this regard:

"A: Well, from time to time throughout the day he was advised of his rights under the Miranda decision and he was also advised before he made the written statement.

THE COURT: The question is, Lieutenant, just what did you say to him?

THE WITNESS: I advised him before he made a written statement that he could have his attorney or his father present.

THE COURT: Is that all?

THE WITNESS: Yes, sir.

BY MR. FITZSIMMONS: (State's Attorney)

Q: That is all that you said to him?

A: Yes, sir.

Q: All right."

Lt. Erber of the Elmhurst police department further testified that defendant Schoeneck "had been warned of his rights three or four times that day and he was warned again of his rights before he made out the oral—the written statement." Lt. Erber testified further: "I was told that he was informed of his rights" and further: "The way I knew they were given their warnings is when they were brought into the station and the officers told me when I asked them whether they were given their warnings."

Upon redirect examination, Lt. Erber testified for the first time that he had read the Miranda warnings to the defendants from a card. One defendant denied the material on the card had been read to him and the other did not recall. One defendant testified that he had asked for a particular attorney and the other testified he had phoned, but had not reached an attorney during the course of the day. The written statements were on forms containing a printed waiver of rights and that waiver apparently was read to or by defendants, but the record indicates this occurred after oral statements had been made and was in the context of: "Read that. Sign it."

■ Under the circumstances, the order of the trial court suppressing oral and written statements of the defendants was correct.

The second issue concerns defendant's discharge. It is difficult to determine from the record the exact commencement date of each defendant's incarceration. Although they were arrested simultaneously on August 30, 1969, various references indicate that the continuous incarceration of one of them commenced a day or several days after the other. It is clearly conceded, however, that both defendants had remained incarcerated for more than 120 days prior to entry of orders releasing them from custody on January 28, 1970. Orders entered February 2, 1970, vary in form as the order concerning Schoeneck dismisses the cause and the order concerning Robbins discharges the defendant, but both orders are based on the failure of the State to bring them to trial within 120 days as required by statute.

The State contends the discharge was erroneous because the delay was "occasioned by the defendants" within the meaning of Ill. Rev. Stat. 1969, ch. 38, sec. 103-5(a), and that motions made by defendants tolled the running of the statute.

Schoeneck was represented by private counsel, and Robbins by the public defender. Shortly after indictment, both defendants filed various motions including demand for a list of prosecution witnesses at trial, a list of witnesses to any oral statements by defendants, a copy of any written statements by defendants, preparation of a transcript of grand jury testimony for use at trial, and opportunity to examine any physical evidence, which were granted in an order directing the State to furnish the lists of witnesses and copy of any written statement on or before October 24, 1969. Bail for both defendants was reduced by order entered October 29, 1969, pursuant to defendants' motions. These motions were timely and do not appear to have occasioned any delay which would interfere with trial within 120 days.

On November 21, 1969, the matter came up for hearing on defense motions to suppress the line-up identification and suppress defendants' statements. Defendant Robbins' statement had not yet been furnished to his attorney. The trial judge ordered it reproduced and furnished forthwith to Robbins' attorney who said he was ready to proceed with hearing on suppression of the line-up identification but would like to see the statement before answering on suppression of the statement. Robbins' statement was thereupon furnished and hearing proceeded on both matters in sequence. Hearing continued throughout the balance of the day and after the assistant state's attorney advised the court that in view of the evidence he wished to bring in an additional witness who was not present that day. Hearing was continued to the afternoon of December 5, 1969, and on that morning, without appearance of defense counsel, was continued to December 19, 1969, as other matters required the court's attention on the afternoon of December 5, 1969. On December 19, 1969, the State presented as an additional witness, the man who had viewed defendants at the police station, and the defendants also testified in their own behalf.

The record contains a written motion for defendant Robbins filed December 3, 1969, to quash the indictment because it charged separate felonies in violation of Ill. Rev. Stat., ch. 38, par. 111—4, or in the alternative to require the State to elect on which count it would proceed. Although the motion uses older terminology, it is in substance a motion to sever separate offenses as provided in sec. 114—8, ch. 38, Ill. Rev. Stat. 1969. (See *People v. Fleming* (1970), 121 Ill.App.2d 97, 257 N.E.2d 271.) The indictment named both defendants and contained five counts. Four

counts charged burglary, each at a different address. Four counts alleged offenses committed on August 25, 1969, and a fifth count alleged an offense committed on August 27, 1969.

At conclusion of the suppression hearings on December 19, 1969, the assistant state's attorney requested a trial date and Robbins' attorney told the court his motion to quash was on file. Robbins' counsel said 120 days would run shortly and he had earlier referred orally to the problem of joinder of separate offenses commencing with the date of arraignment. Schoeneck's attorney stated he had previously adopted the motion to quash or elect. The assistant state's attorney said it was his position that the joinder was proper as all offenses were part of a comprehensive transaction and offered nothing further. After an unrecorded discussion in chambers, the transcript of December 19, 1969, shows the following:

"THE COURT: All right, December 29th at 2:00 o'clock, is that right?

(ATTORNEY FOR DEFENDANT ROBBINS: Yes, sir.

THE COURT: Is that what we agreed on?

(ATTORNEY FOR DEFENDANT SCHOENECK): Yes, sir.

(ASSISTANT STATE'S ATTORNEY): Yes, sir."

A docket entry for December 19, 1969, indicates defense motions to quash were set for hearing December 29, 1969.

No transcript has been furnished concerning December 29, 1969, and a docket entry indicates only that counsel appeared, defense motions to quash the indictment or in the alternative to require the State to elect were taken under advisement, and the cases were continued to January 7, 1970. On that date they were continued to January 23, 1970. The docket entries do not disclose a moving party for these continuances.

■ We are mindful that the trial court judge was familiar with the entire sequence of events, and in view of his order discharging the defendants believe we are not justified in interpreting the closing remarks at hearing December 19, 1969, which are set out above, as an agreement by defense counsel to continue the matter beyond 120 days from the date of incarceration or as an agreement sufficient to toll the statute and cause it to run anew on December 19, 1969. Moreover, although no written order appears in the record, nor does the docket indicate any ruling upon the motion to quash, there are indications that the trial court viewed the state's refusal to elect as unacceptable. Nevertheless, we hold it was error to discharge the defendants for failure to bring them to trial within 120 days.

Article II, Section 9 of the 1870 Illinois Constitution guarantees an accused a speedy trial but specifies no time. Prior to 1964, this constitutional guarantee was implemented by statute requiring trial within four

months, Ill. Rev. Stat. 1963, ch. 38, sec. 748, and upon January 1, 1964, the effective date of the new Code of Criminal Procedure, this statutory period was carried over more precisely as 120 days and is found in Ill. Rev. Stat. (Code of Criminal Procedure effective January 1, 1964) ch. 38, par. 103—5 which provides in pertinent part as follows:

"Every person in custody in this state for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody *unless delay is occasioned by the defendant* ⁕ ⁕ ⁕." Emphasis supplied.

 It is well settled that where an accused in any manner causes delay in trial by his own action, the statutory period is renewed and starts to run again from the date the delay occurred, or to which the cause is continued. (*People v. Hamby* (1963), 27 Ill.2d 493, 190 N.E.2d 289; *People v. Taylor* (1970), (Ill.App.2d), 258 N.E.2d 823.) Many actions of defendant have been held sufficient to toll the statute and cause it to run anew, including a motion for suppression of evidence involving some necessarily inherent delay (*People v. Jones* (1971), 266 N.E.2d 411; *People v. Ross* (1971), 271 N.E.2d 100), and a motion for severance, except that an unreasonable length of time must not elapse between the date motion for severance is filed and the date it is heard on its merits. *People v. Jones* (1968), 101 Ill.App.2d 423, 243 N.E.2d 481.

There is no contradiction in this record that Robbins' counsel called the joinder of offenses to the attention of the state's attorney at an early stage of the proceedings even though it was not reduced to writing until December 3, 1969. Even on that date it might have been disposed of more expeditiously and before the running of the 120 days, had the State not chosen to stand on the face of the indictment and simply state that alleged offenses at five locations on different dates were part of a single comprehensive transaction. Under the unique circumstances of this case, we do not believe we can justly hold that defendants' motion to sever tolled the statute or caused a delay attributable to defendants.

 We do hold, however, that defendants' motions to suppress line-up identification and to suppress statements caused delay in trial attributable to them. These motions necessarily involved hearing of testimony and consideration of it. The State was less than diligent in failing to furnish a copy of Robbins' written statement to his counsel within the time ordered by the trial court, and unless there were sufficient reasons should have had all necessary witnesses present when hearing on the motions commenced November 21, 1969, even though it appears from the record that the testimony was so lengthy that hearing necessarily could not have been completed on that date. Even if defendants are indulged with the benefit of all oversights by the State, the 120 day period was tolled and

commenced to run anew not later than November 21, 1969, and it was therefore error to discharge them on February 2, 1970.

The orders of the trial court suppressing defendants' statements are affirmed and orders discharging defendants are reversed. The cause is remanded with direction to the trial court to rule on defendants' motions to quash the indictment or to require the State to elect on which count it will proceed (substantially motions to sever the offenses) and for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded.

MORAN, P. J., and ABRAHAMSON, J., concur.