THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES EDWARDS, Defendant-Appellant.

(No. 73-292; )

Second District (2nd Division)—May 7, 1975.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz and Martin Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Defendant, James Edwards, and two codefendants were each indicted on counts of rape and robbery by the Lake County grand jury. Defendant and one of the codefendants were tried together in a jury trial. The robbery counts were dismissed before the case went to the jury. Verdicts of guilty of rape were returned against defendant and the codefendant. Defendant was sentenced to 10 to 20 years' imprisonment, and he appeals on the grounds that the Illinois rape statute is unconstitutional, that the trial court erred in failing to conduct a competency hearing sua sponte, that the trial court abused its discretion and violated defendant's right to effective assistance of counsel in refusing defendant a continuance sought on the ground that defendant had retained different counsel, and that the minimum sentence imposed on defendant was excessive.

Defendant had been represented by Mr. Boches, a privately retained attorney from his arraignment on February 2, 1973, until April 9, 1973, the trial date, at which time defendant requested a continuance on the grounds that he had retained another attorney, which continuance was denied. This other attorney had earlier appeared in court to move for a continuance of the instant case, but as he refused to file an entry of appearance the court refused to allow him to make the motion. Other than this one time, this attorney never contacted the court, Mr. Boches, or the State's attorney, though he had been informed by the court that the instant case was up for trial on April 9, 1973.

The attorney for the codefendant sought a severance of trials, arguing that defendant had changed his defense from consent to denial of having been present at the scene of the rape, which defense would have adverse effects on the codefendant. This attorney also asserted that defendant refused to cooperate with his attorney. Mr. Boches indicated that he was completely prepared to go to trial and that he had had conversations with defendant. Mr. Boches then brought up defendant's request for a continuance. He stated that he had gotten a call from a woman claiming to be a lawyer's secretary which lawyer had purportedly been engaged by defendant. However, this lawyer had never contacted Mr. Boches or inquired in any way about the case or about a substitution of lawyers.

Defendant then spoke to the court, referring to a lawyer named Holloway. The court and Mr. Boches stated that Holloway had never tried to enter his appearance in the case. The continuance was denied. Defendant next indicated to the court that he refused to elect a defense from those

explained to him by Mr. Boches, but then said, "* * * I'm saying I was not there." Mr. Boches indicated that the defense would be a simple denial, putting the State to its proof. The severance was denied and the State put on its case. After the State rested, Mr. Boches indicated that he could produce no testimony helpful to his case and asked defendant if he was in agreement with the advice to simply remain silent. Defendant stated that he did not want to make a statement and "I don't want to say nothing." The defense then rested.

On April 25, 1973, Mr. Boches appeared in court with defendant to receive part of the bond money in payment of his fee. Defendant stated that he did not think he should have to pay Mr. Boches as he had asked for a continuance to get other counsel. The court stated that defendant had had ample time to retain other counsel, but no other attorney filed an entry of appearance.

The evidence adduced at trial indicated that on the evening of November 25, 1972, defendant forced the complainant into a car with himself and two others by threatening to shoot her. They drove awhile, then stopped, at which point the complainant tried to get away, but failed. The complainant was pushed into the back seat. She was menstruating at the time and her sanitary napkin was taken off and thrown outside the car. The complainant was repeatedly raped by the three, defendant, referred to by the complainant as "the mean one," raping her first and last. On the return trip, defendant stayed in the back seat with the complainant, forcing her to keep her sweater pulled up and caressing her. Before the complainant was let out of the car, one of the two in the front seat rifled her purse and defendant took the class ring of the complainant's boy friend, which she was wearing. After begging, the ring was given back. Complainant was told that her assailants had taken a card with her name on it from her purse, and that if she told anyone about the rape they would come after her.

The presentence report showed that defendant was a married man with one child, employed, attended classes in 1969-70 for the "educable mentally handicapped," and had no prior offenses. Defendant was cooperative with the intervening officer but was described as apparently confused and embittered by the result of his trial and the handling of his defense. This report was the only evidence introduced in support of defendant's case at the sentencing hearing. The judge cited as reasons for the sentence, the prolonged nature of the rapes, the persistent pleading with her assailants by the complainant, and the fact that she was finally let out in an unsafe neighborhood. The codefendant was sentenced to 15 to 30 years' imprisonment "and because of the peculiar background of Mr. Edwards, showing that he definitely is in need of some kind of

psychiatric evaluation and treatment, which I'm sure would be helpful in his case, I'm going to sentence him to 10 to 20 years."

The issues on appeal are:

I. Is the Illinois rape statute unconstitutional as a denial of equal protection on the basis of sex, and/or alternatively, has this issue been preserved on appeal?

II. Did the court err in failing to conduct a hearing sua sponte on defendant's fitness to stand trial?

III. Did the trial court abuse its discretion and violate defendant's right to effective assistance of counsel of his choice in denying defendant's motion for a continuance to retain different counsel?

IV. Did the court err in imposing a sentence of the minimum provided by law?

■■ I. Defendant's assertion of the unconstitutionality of the Illinois rape statute was not raised in the trial court and cannot be raised for the first time on appeal. *People v. Amerman,* 50 Ill.2d 196; *People v. Spooner,* 22 Ill.App.3d 685. Also see *People v. Medrano,* 24 Ill.App.3d 429.

II. Defendant argues that the court on its own motion should have held a hearing on defendant's fitness to stand trial. A determination of a defendant's fitness to stand trial is to be made when a bona fide doubt as to his fitness is raised. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(c); *People v. Thomas,* 43 Ill.2d 328.) One is unfit to stand trial if he is unable to understand the nature and purpose of the proceedings and assist in his defense. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(a). There is no contention that defendant's conduct was such that either the court or counsel should have questioned his competency. No mention of or a motion for a competency hearing was made. When no request for a hearing is made, absent other compelling factors, it is not necessary for a court to order a competency hearing sua sponte. *People v. Skorusa,* 55 Ill.2d 577, 583; *People v. Solesbee,* 16 Ill.App.3d 924.

We find no other compelling factors here. No useful purpose would be served by an extended discussion of the cases cited by defendant concerning bona fide doubt as to a defendant's fitness. We simply note that those cases involved defendants who acted very irrationally or were hallucinating. At the most, defendant's statements here show some confusion over what his defense was to be. However, he made it clear that he wished to remain silent and not testify. Thus, he fully cooperated with his lawyer's trial plan of putting the State to its proof and not presenting any affirmative defense, which plan was a logical one, in view of the circumstances here.

Defendant did mention that he was getting another lawyer to handle

his case, but it is clear from the record that he had made no specific arrangement with that second lawyer. When denied a continuance to get another lawyer, defendant sat quietly at the table with his counsel throughout the trial. Defendant's counsel clearly stated that he had talked extensively with defendant and his family and was fully prepared to go to trial. It appears that at the day set for trial defendant simply wished that he had another lawyer and wanted to delay the proceedings. This hardly raises a bona fide doubt as to his fitness to stand trial. When questioned by the court as to his attempted retention of another attorney, he could not explain why this other attorney had not entered his appearance. The fact that defendant had no satisfactory answer to give hardly goes to his fitness.

■■ Finally, defendant's presentence report indicated that 2 or 3 years before the instant offense he had been enrolled in classes for the educable mentally handicapped. Also, in sentencing defendant the trial judge indicated that defendant "* * * definitely is in need of some kind of psychiatric treatment and evaluation, which I'm sure would be helpful in this case * * *." Contrary to defendant's assertion, the report and the statement of the judge do not indicate that defendant was unfit to stand trial. "Fitness speaks only to a person's ability to function within the context of trial * * *." (Ill. Ann. Stat. ch. 38, § 1005—2—1; Council Commentary (Smith-Hurd 1973).) An individual may be competent to stand trial despite the fact that he is mentally defective and requires psychiatric treatment. *People v. Gibson,* 21 Ill.App.3d 692, 695.

III. Although an accused has the right to counsel of his own choice, this right cannot be permitted to bring about an indefinite thwarting of the administration of justice. (*People v. Green,* 42 Ill.2d 555, 557.) Error was found in *Green* where the trial court refused a continuance for privately retained counsel to get back to town, the defendant had the public defender appointed to represent him at the same time the defendant asked for the continuance, and there was sufficient information before the court to verify the defendant's claim that private counsel had been retained. In the instant case defendant retained private counsel, had over 2 months to retain new counsel, and apparently did not have other counsel retained. The court in the instant case lacked the sufficient information to verify defendant's claim of other retained counsel, unlike the court in *Green.*

■■ The granting of a continuance to permit preparation for trial is within the discretion of the court and the court's decision will not be disturbed on appeal unless there is an abuse of discretion. (*People v. Latimer,* 35 Ill.2d 178.) In *Latimer,* defense counsel was refused a continuance sought on the grounds that his client would not cooperate with

him in the preparation of a defense. The court indicated that the defendant could not complain about denial of a continuance on appeal because the noncooperation was his fault. In the instant case defendant cannot complain of the denied continuance as it was through his own fault that he did not retain another attorney. Defendant's counsel was prepared for trial, presented a defense in accord with defendant's desire to remain silent, and properly represented defendant in every way. Looking at the record it appears that defendant simply did not want to go to trial. The trial judge correctly refused to accede to this dilatory desire.

IV. The minimum prison term for the offense of rape is 4 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).) Defendant alleges that the court erred here in sentencing him to 10 to 20 years in prison. *People v. Porter*, 13 Ill.App.3d 893, cited by defendant in support of reducing his sentence to the minimum, is completely distinguishable, as the rape there was not as brutal as here and the defendant there turned himself in. This court will not disturb a sentence within the limits set by the legislature, unless it is at great variance with the purpose and spirit of the law or disproportionate to the nature of the offense, as the trial court is in a superior position to determine the proper punishment. (*People v. Hampton*, 44 Ill.2d 41.) Based on the facts in the instant case, we cannot say that this sentencing was excessive.

For the foregoing reasons, the judgment of the Circuit Court of Lake County is affirmed.

Judgment affirmed.

RECHENMACHER, P. J., and T. MORAN, J., concur.