THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES MURPHY, Defendant-Appellant.

Second District (2nd Division)    No. 75-451

Opinion filed March 29, 1977.

Ralph Ruebner and Joshua Sachs, both of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

Defendant herein was indicted for rape and indecent liberties. He was tried by a jury, found guilty of indecent liberties and sentenced to 12-70 years imprisonment. He appeals.

The defendant, in substance, was charged with sexually molesting a 6-year-old girl on August 31, 1974, in Lake County. No purpose would be served in setting forth the details of the offense. He was arrested on

September 9, 1974, and the following chronology sets forth the dates of the progress of this prosecution.

■■ On October 24, 1974, after the indictment, the cause was set for trial on December 2, 1974, and continued to November 8 for a status report. On the same date the defendant made a motion for discovery, as did the State. On October 28 the State filed an affidavit of compliance with the discovery order. On November 8 defense counsel advised the court that she had not complied with the discovery order and she was directed to do so by November 12. At the same time, on November 8, defendant's counsel advised the court that she was going to file a motion to suppress and the court directed her to file the same by November 14. Also on November 8 defendant's counsel made a motion for a polygraph test and a spermatoza test by a pathologist. The cause was then continued to November 18. On that date the cause was called but defendant's counsel did not appear and the court continued the matter until November 19. On November 19 the court set the motion to suppress for hearing on December 3 and the trial to follow thereafter on that date. On December 3, the date set for trial and for the hearing on the motion to suppress, the State's Attorney told the court that he had discovered that Illinois Revised Statutes, chapter 23, paragraphs 2401 and 2402 imposed an obligation on the court to order a pretrial psychiatric examination of a party charged with indecent liberties. The State's Attorney further advised the court that such an examination would abate any further proceedings until the statute had been complied with. The court thereupon continued the matter generally and a few days later appointed two psychiatrists to make such an examination under the provisions of chapter 23, paragraphs 2401 and 2402. The purpose of these examinations or what action the trial court should take upon the psychiatric reports it receives is not clear from the statute or the case law. (*People v. Leonard* (1976), 34 Ill. App. 3d 911, 341 N.E.2d 141.) However, it is clear that the trial court and the State's Attorney were in error in believing that these examinations were mandatory. In *People v. Pierce* (1976), 62 Ill. 2d 223, 225, 341 N.E.2d 705, 706, the supreme court held that this statute, "properly interpreted, requires the court to order psychiatric examinations only when the defendant has requested such examinations." The motion to suppress was heard on January 20, 1975. The motion was denied after a complete hearing and on January 21, 1975, 134 days after the defendant's arrest, the trial commenced. This trial resulted in a mistrial and a new trial was set, which commenced on February 10, 1975, resulting in the conviction of the defendant.

Defendant has urged five grounds as a basis for a reversal of his conviction. They are as follows. 1. The defendant was entitled to a discharge under the 120-day rule (Ill. Rev. Stat. 1973, ch. 38, par. 103—

5(a)(d)). 2. A hearing should have been held to determine the defendant's fitness to stand trial. 3. The defendant did not receive proper representation by counsel. 4. Hearsay evidence was improperly admitted. 5. The sentence of 12-70 years for the offense herein was excessive.

■■ We turn first to the contention of the defendant that he was entitled to discharge under the 120-day rule. On October 21, 1974, the cause was assigned to Judge Henry H. Caldwell. On October 23, 1974, the defendant's counsel entered her appearance and moved for a substitution of judges, from Judge Caldwell and Judge Geiger. On the same date the matter was transferred to the chief judge for reassignment and on the same date the cause was placed on the trial call of Judge Van Deusen. This raises the first question as to this issue, and that is whether the motion for substitution of judges tolls the statute. It is, of course, to be noted that the cause was reassigned to a new judge on the same date that the motion for substitution was made. In a somewhat similar situation the supreme court in *People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595, considered the situation where a substitution of judge was requested and the reassignment made on the same date. The court said:

> "This court has held that a motion for a substitution of judges constitutes a delay occasioned by the accused which will interrupt the running of the statutory period." (53 Ill. 2d 550, 553, 293 N.E.2d 595, 597.)

The court observed that when the cause was reassigned to another judge that it would be assumed that defendant's case would presumably be placed at the bottom of the list of the new judge's then pending cases and further observed that it would be impossible to state whether the motion for substitution of judges actually delayed bringing defendant's case to trial or advanced it. (See also *People v. Rankins* (1960), 18 Ill. 2d 260, 163 N.E.2d 814; *People v. Iasello* (1951), 410 Ill. 252, 102 N.E.2d 138.) Most recently, in *People v. Spicuzza* (1974), 57 Ill. 2d 155, 311 N.E.2d 112, 114, the supreme court again considered this issue and stated:

> "This court has repeatedly held, most recently in *People v. Zuniga,* 53 Ill. 2d 550, that a motion for a change of judges constitutes delay occasioned by the defendant which will toll the 120-day period, and we see no reason to depart from that principle here."

See also *People v. Richmond* (1975), 34 Ill. App. 3d 328, 340 N.E.2d 240, to the same effect.

■■ This court recognizes the fact that section 103—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 103—5) has been amended effective March 1, 1977. (See Ill. Rev. Stat. 1976 Supp., ch. 38, par. 103—5(f).) By this amendment the delay occasioned by the defendant will not start the 120-day period running anew; the actual time of the delay temporarily suspends the period in which the defendant shall

be tried. This statute is not applicable to the situation before us. We, therefore, find that the delay occasioned by the substitution of judges herein does in fact toll the running of the 120-day period as provided for under section 103—5(a) of the Code of Criminal Procedure.

■■ The next issue relative to the tolling of this statute is the question of whether or not the defendant's motion to suppress tolls the running of this statute. On both November 8 and November 19, 1974, defense counsel served notice upon the State that she would appear and move to suppress the oral and written statements of the defendant. The motion to suppress was not filed on either date. On November 19, 1974, the trial judge indicated a hearing on the motion to suppress would be held on December 3, 1974, rather than on December 2 as originally scheduled. Unfortunately the motion to suppress is not included in the record herein but the court and counsel for both the State and defendant recognize the fact that the same was, in fact, filed and a lengthy hearing had thereon on December 3. In *People v. Schoeneck* (1971), 1 Ill. App. 3d 395, 274 N.E.2d 483, this court considered the question of whether or not a motion to suppress evidence constitutes delay in trial caused by the defendant. We held in that case that the defendant's motion to suppress the lineup identification and to suppress statements caused delay in the trial attributable to the defendant. The same situation is presented here. The most recent case involving this question is *People v. Donalson* (1976), 64 Ill. 2d 536, 356 N.E.2d 776. There the supreme court held that the defendant did, in fact, cause delay in filing his motion to suppress his confession as the court was required to conduct a hearing into the merits of this motion. The court further observed in *Donalson*,

> " * * * when a defendant files motions such as a motion to suppress evidence, he is ordinarily chargeable with the delay occasioned by the filing of the motion and he moreover has the primary obligation to call the motion for hearing and disposition." 64 Ill. 2d 536, 542, 356 N.E.2d 776, 778.

See also *People v. Wilson* (1974), 19 Ill. App. 3d 466, 311 N.E.2d 759. In the instant case the court, on November 19, set the hearing on the motion to suppress on December 3 by which time the motion itself had been filed. We fail, indeed, to see how these actions relative to the motion to suppress can be held to be other than a delay attributable to the defendant and we so hold. See also *People v. Ross* (1971), 132 Ill. App. 2d 1095, 271 N.E.2d 100; *People v. Jones* (1971), 130 Ill. App. 2d 769, 266 N.E.2d 411.

■■ The question has arisen in this regard as to whether or not a delay in trial is attributable to defendant for its handling of discovery. We recognize, of course, that not every motion for discovery filed by defendant will constitute delay occasioned by him. (*People v. Nunnery*

(1973), 54 Ill. 2d 372, 297 N.E.2d 129; *People v. Donalson.*) In the instant case, the defendant's motion for discovery was made on October 24, 1974, and the State complied with the same on October 28, 1974. While defendant's motion did not cause delay in trial, it is interesting to note that defense counsel did not comply with the State's motion for discovery. On November 8, 1974, defense counsel was directed by the court to comply with such order by November 12, 1974, and the cause was continued to November 18, 1974. The defendant's failure to comply with the trial court's discovery order entered October 24, 1974, constituted delay attributable to defendant. In considering all of the above, it is obvious to this court that numerous delays were caused by the defendant which, in affect, tolled the operation and the running of the 120-day period and we so hold.

■■ The next contention of the defendant is that he was denied due process of law when the judge, the prosecutor and the defense attorney failed to seek a hearing on his fitness to stand trial. This is not to be confused with the psychiatric examination which was ordered by the court. There is no question but that the defendant here is of low intelligence as indicated by various intelligence tests showing an I.Q. of 37 to 60. He was considered EMH (educable mentally handicapped) and had completed grade school and two years of high school. At the time of the motion of the State to appoint psychiatrists to examine the defendant under sections 2401 and 2402, the court stated to defense counsel,

> "COURT. All the court is saying, this is not a question of fitness; you are not raising fitness, Mrs. Browne; not suggesting here that this defendant is not aware of the charge here against him, or the nature of the penalty; right?
>
> MRS. BROWNE. No.
>
> COURT. You have no question about his fitness to stand trial, is that right?
>
> MRS. BROWNE. Well
>
> COURT. You certainly—
>
> MRS. BROWNE. I haven't raised it, let's put it that way.
>
> COURT. Certainly as an officer of this court, you should have raised it a long time ago, and you should raise it right now if you have any bona fide doubt that this young man does not understand what he is charged with and what the nature of this offense is.
>
> MRS. BROWNE. No, I am sure he understands."

During the course of the trial, out of the presence of the jury, the court interrogated defense counsel as to the nature of her questions and as to whether she was raising the ability of the defendant to understand the nature of the charge against him and to cooperate with his lawyer. Defense counsel stated to the court that she was attempting to show that

the defendant had difficulty in comprehending what transpired at the time of the explanation of his *Miranda* warnings. The court made the following statement:

> "But you are an attorney of this court. You were privately retained in this case. You have an obligation if you have any bona fide doubt as to his fitness, that should have been raised before this court, because you place on this court here the responsibility, and if this line of questioning is pursued, the court is then faced with the dilemma as to whether or not I should halt this trial right now and delay it so I can have a fitness hearing, and I don't want to do that, but on the other hand—and I am not suggesting it—all I am simply saying is do you at the present time have any bona fide doubt as to his fitness?"

Defense counsel replied:

> "I have fortunately two psychiatric reports very recent that he is competent to confer with counsel and to stand trial, and they are both dated late December."

This court considered this question in *People v. Edwards* (1975), 28 Ill. App. 3d 216, 218, 328 N.E.2d 18, 21, where the defendant therein was also classified as educable mentally handicapped. There, as in the instant case, we found that the defendant was able to cooperate with counsel and was able to understand the charge against him. We reiterate that it was not the duty of the court, or the prosecution to conduct a competency hearing where defense counsel does not consider him incompetent, as herein. We do not find *People v. Chambers* (1976), 36 Ill. App. 3d 838, 345 N.E.2d 119, to be factually applicable to the case before us. In view of the above we do not find any obligation on the court to hold a hearing on his fitness to stand trial and it is obvious that defense counsel was of the impression that the defendant was, in fact, competent to stand trial. We find this contention raised at this time as to his competence to be without merit.

■■  The next contention of the defendant is that his trial counsel was incompetent. We do not agree. The main thrust of appellate counsel's argument as to trial counsel's incompetence relates primarily to the failure of trial counsel to succeed in suppressing the confession primarily in that she failed to stress the low intelligence of the defendant. As we stated in *People v. Reed* (1972), 8 Ill. App. 3d 977, 981, 290 N.E.2d 612, 616,

> "It cannot be said that an accused is incapable of understanding or waiving constitutional rights merely because of low intelligence."

As the supreme court stated in *People v. Torres* (1973), 54 Ill. 2d 384, 391, 297 N.E.2d 142, 146,

> "In such a case the court will not reverse a conviction because of the incompetency of counsel unless the representation is of such a

low caliber as to amount to no representation at all or reduces the court proceedings to a farce or a sham."

In the case before us we believe that the defense counsel did vigorously represent her client. While she was unsuccessful, she moved to suppress the evidence, moved for discovery and succeeded in the first trial in having a hung jury which resulted in a mistrial. The fact that she was not able to secure exoneration in the second trial does not indicate incompetence in this court's opinion. It may be that she was dilatory in her procedure in this case, but the mere fact that she was unable to suppress the confession does not in itself constitute incompetence on the part of counsel.

■■ The next contention of the defendant is that the complainant's mother was allowed to testify in some detail regarding her daughter's complaint to her. There is no question but that the child was sexually molested, as evidenced by the doctor's testimony herein. We do not believe that the testimony in question was objectionable and was, at best, harmless error. In any event, this question is not properly before this court as no objection was made to the testimony of the mother at the trial. "A rule of evidence not invoked by timely objection is waived." *People v. Akis* (1976), 63 Ill. 2d 296, 299, 347 N.E.2d 733, 735.

■■ The last argument of the defendant is that the sentence of 12-70 years should be reduced. In view of the circumstances of this case, as we have repeatedly said and as the supreme court has reiterated, the trial court is in a far better position as to the determination of the sentence than the reviewing court. As observed by the trial court in this case, the defendant should be removed from society until such time as he has been rehabilitated. For that reason the trial court observed that he would give him a sufficient sentence, for potential rehabilitation and in the event that he were not rehabilitated, that he would be removed from society by the maximum sentence imposed. We therefore affirm.

Affirm.

RECHENMACHER, P. J., and SEIDENFELD, J., concur.