THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN WESLEY WILLIS, Defendant-Appellant.

Fifth District   No. 77-304

Opinion filed October 6, 1978.

Michael J. Rosborough and Debra Knight Loy, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Stephen J. Maassen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, John Wesley Willis, appeals the judgment of the Circuit Court of St. Clair County sentencing him to a prison term of 6 2/3 to 20 years following revocation of his probation.

In February 1976, defendant was charged by indictment with the offense of armed robbery. After arraignment on the charge at which he pleaded not guilty, the trial court ordered that a psychological evaluation of the defendant be made; although, it is unclear as to the reason for this evaluation or which party, if either, requested it. The report of the psychological evaluation indicated that the defendant was severely retarded but with no bizarre behavior or psychological illnesses affecting his judgment. The psychologist considered him trainable in a program designed for the development of the mentally disabled. It was also reported that the defendant had an I.Q. of 27.

On March 8, 1976, defendant pleaded guilty to the charge of robbery in a negotiated plea which included a recommendation that he be placed on probation under the condition that he participate in a developmental disability program. The defendant was admonished as to the rights he waived by such a plea and the penalties that could be imposed. Defendant answered affirmatively when asked whether he was pleading guilty by choice. The State gave as a factual basis for the plea that its

witnesses would testify that the defendant approached a 74-year-old woman with his hands in his pockets, indicating that he might have a weapon, and took her purse. Defendant was then apprehended by police officers to whom the victim had reported the offense, gave a full confession and took the police to the site where he had discarded the purse. The defendant admitted that the factual basis for the charge against him was substantially true and indicated to the court that there was nothing in the proceeding he did not understand. The court accepted the plea and ordered that a presentence investigation be made.

The presentence report indicated that the defendant, then 19 years of age, had received no formal education beyond elementary school. The report also showed that the defendant had a prior conviction for battery, and pending charges of disturbing the peace and possession of cannabis all occurring within 15 months prior to his arrest for armed robbery. On April 2, 1976, defendant was sentenced to three years' probation with the condition imposed that he be placed in a developmental disability program. With regard to this sentence, the court asked defendant, "Do you understand what I have done to you?" The defendant responded, "Yes." The trial court then advised him of his rights. No appeal was taken by the defendant from this disposition.

A petition to revoke probation was filed on May 4, 1977, alleging that the defendant had violated his probation by committing the offense of rape. At the hearing, witnesses testified that the defendant raped a 10-year-old girl in the presence of her 8-year-old brother. The defendant did not testify at the hearing nor did he present any evidence. The court then found that the defendant had violated his probation as alleged by the State. The State recommended that the defendant be given the maximum sentence allowable for the original robbery conviction, 6 2/3 to 20 years imprisonment without credit for time served on probation. At this point, defense counsel requested that the defendant be examined to determine his fitness to be sentenced giving no reason in support of this request. The trial court denied the request, commenting, "I think [defendant] has been examined by psychologists, psychiatrists, defense attorney, school teachers, police officers, everyone else. He possesses the mentality necessary to be sentenced." Defendant was thereupon sentenced to 6 2/3 to 20 years imprisonment without credit for time spent on probation.

On appeal, defendant contends that the trial court erred in failing to conduct a hearing to determine his fitness to be sentenced in view of the evidence before it reflecting defendant's diminished mental capacity. Defendant also contends that the trial court abused its discretion in imposing sentence for the robbery conviction because it improperly considered his conduct while on probation.

■■■ As part of defendant's initial contention that the trial court erred in

failing to order a fitness hearing prior to sentencing, defendant also asserts that the same trial judge erred in failing to order a fitness hearing *sua sponte* at the time he entered his plea of guilty to the robbery charge. This argument by the defendant, however, is not before this court inasmuch as no appeal was taken from the original robbery conviction. Where a defendant does not appeal within 30 days from a judgment entered upon a plea of guilty, he may not attack the judgment by filing a notice of appeal from a subsequent order revoking probation and imposing a sentence of imprisonment. (Ill. Rev. Stat. 1975, ch. 110A, pars. 604(d), 606(b); *People v. Willingham*, 38 Ill. App. 3d 612, 349 N.E.2d 120 (4th Dist. 1976); *People v. Fitzgerald*, 25 Ill. App. 3d 973, 324 N.E.2d 13 (2d Dist. 1975).) Thus, our inquiry on this issue is limited to the propriety of the trial court's denial of the defendant's request for a fitness determination made after the probation revocation hearing and prior to sentencing.

Section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1) defines fitness to stand trial or to be sentenced and establishes procedures to determine it. Section 5—2—1(a) provides:

> "(a) For the purposes of this Section a defendant is unfit to stand trial or be sentenced if, because of a mental or physical condition, he is unable:
>
>> (1) to understand the nature and purpose of the proceedings against him; or
>>
>> (2) to assist in his defense."

Section 5—2—1(c) requires the court to order a fitness determination where "a bona fide doubt of the defendant's fitness to stand trial or be sentenced is raised * * *." Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(c).

■■■ The question of whether a bona fide doubt exists regarding a defendant's fitness to stand trial or be sentenced lies within the sound discretion of the trial court. (*People v. Morthole*, 51 Ill. App. 3d 919, 366 N.E.2d 606 (5th Dist. 1977); *People v. Carter*, 16 Ill. App. 3d 842, 306 N.E.2d 894 (3d Dist. 1974).) It is the court's responsibility to stop the proceedings and determine this question before proceeding further whenever it becomes apparent during the proceedings that a bona fide doubt of an accused's fitness exists. (*People v. Fontaine*, 28 Ill. App. 3d 450, 328 N.E.2d 685 (5th Dist. 1975).) The trial court's determination with regard to the issue of whether a bona fide doubt of the defendant's fitness has been raised will be given great weight by a court of review and will not be disturbed absent a clear showing of an abuse of discretion. (*People v. Nesbitt*, 49 Ill. App. 3d 533, 364 N.E.2d 553 (1st Dist. 1977); *People v. Carter*).) After a careful review of the record, we are not persuaded that the trial court abused its discretion in denial of defense counsel's request for a fitness hearing. The trial court was in a superior position to observe

and evaluate the defendant's behavior and his ability to understand the proceedings and cooperate with counsel.

■■ Defendant's contention that there existed a bona fide doubt of his fitness is based on the conclusion in the psychological evaluation that he was severely mentally retarded; however, mental retardation does not, of itself, evidence unfitness for trial or for sentencing. In *People v. Murphy*, 47 Ill. App. 3d 278, 361 N.E.2d 842 (2d Dist. 1977), the defendant was found fit despite an I.Q. of 37 to 60. He was considered "educable mentally handicapped," similar to the evaluation of the instant defendant. The *Murphy* court held that where the record indicated that the defendant was able to cooperate with counsel and understand the charge against him, the trial court was not remiss in failing to raise the issue of the defendant's fitness. (See also *People v. Perkins*, 53 Ill. App. 3d 412, 368 N.E.2d 675 (1st Dist. 1977); *People v. Edwards*, 28 Ill. App. 3d 216, 328 N.E.2d 18 (2d Dist. 1975); *People v. Reed*, 8 Ill. App. 3d 977, 290 N.E.2d 612 (2d Dist. 1972).) Thus, where the record demonstrates that the defendant understood the nature and purpose of the proceedings against him and was able to cooperate with counsel, the trial court may properly refuse his request for a fitness determination notwithstanding the defendant's handicaps.

■■ Defendant also argues that the trial court's hasty treatment of defense counsel's request for a fitness determination and the fact that the court ordered an updated presentence report prior to the probation revocation hearing evidences that the court was predisposed to find that the defendant had violated his probation and to sentence him to the penitentiary. We disagree. Absent a showing of actual bias on the part of the trial court, it is not error for the court to order the preparation of a presentence report prior to the revocation hearing. (*People v. Estes*, 46 Ill. App. 3d 339, 360 N.E.2d 1165 (3d Dist. 1977).) Such reports are favored because they serve to protect the interests of the parties involved, to-wit, the defendant and society.

We note that section 5—2—1 (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1) does not distinguish between fitness to be tried and fitness to be sentenced; however, we would deem the latter to involve a more limited consideration because the defendant's ability to assist in his defense is not in issue. Apparently at this stage of the proceedings the inquiry is directed to whether the defendant had the ability to understand the nature and purpose of his sentence. We believe that the record in the instant cause demonstrates that the defendant had the requisite ability. We further note that defense counsel's request for a fitness hearing was not made until it became apparent that defendant would receive the maximum sentence. Indeed, defendant counsel asked if the State's recommended sentence was the maximum for robbery immediately prior to his request for a

hearing. No reason is given as to why this request was made at such a late stage in the proceedings, nor are we able to discern any such reason. The trial judge was entitled to take into account his personal observation of the defendant both past and at the time of sentencing. We are satisfied that the trial court's denial of the defendant's request for a fitness determination was not an abuse of discretion.

Defendant next contends that the trial court improperly considered his conduct while on probation in sentencing him to a maximum prison term for robbery. It is the State's position that the trial court properly considered the defendant's conduct while on probation, inasmuch as it demonstrated his character and potential for rehabilitation.

When a defendant is admitted to probation and that probation is subsequently revoked, the court may sentence the defendant to any sentence that would have been appropriate for the original offense. (*People v. Bullion*, 21 Ill. App. 3d 297, 314 N.E.2d 731 (5th Dist. 1974).) The sentence imposed in the instant case was within statutory limits. Ill. Rev. Stat. 1975, ch. 38, pars. 18—1, 1005—8—1(b)(3), 1005—8—1(c)(3).

■■ Where a defendant is sentenced following revocation of probation, it is proper for the trial court to consider defendant's conduct on probation in assessing his history, character and rehabilitative potential. (*People v. Ford*, 4 Ill. App. 3d 291, 280 N.E.2d 728 (1st Dist. 1972).) Moreover, if defendant's conduct while on probation reflects poorly on his rehabilitative potential, the trial court may impose a more severe sentence than one which he may have initially imposed. *People v. Shockley*, 54 Ill. App. 3d 1041, 370 N.E.2d 551 (5th Dist. 1977).

■■ Applying these principles to the instant case, it is apparent that the trial court properly considered defendant's conduct on probation and was justified in imposing the maximum sentence. The defendant had a prior conviction for battery and had incurred a bond forfeiture in a case wherein he was charged with disturbing the peace. Defendant's presentence report indicated that he had been dropped twice from the developmental disabilities program to which he had been assigned by the court because of poor attendance and lack of interest. Finally, while on probation, the defendant raped a 10-year-old girl, a charge which he did not dispute at the revocation hearing. Thus, the seriousness of the defendant's offense, the failure of the disability program, and the defendant's history indicated that his rehabilitation was unlikely, at least for a foreseeable period of time. The record demonstrates that the trial court was concerned with the defendant and aware of his low intelligence level. Unfortunately, the facilities available for treatment or incarceration of those with diminished mental capacity are woefully inadequate; however, this situation cannot be remedied by the courts but is a matter of legislative concern. It is clear that in imposing the maximum sentence

on the defendant the trial court was justifiably concerned with the protection of society. We cannot say that in so doing the trial court abused its discretion.

For the reasons stated, the judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES and G. J. MORAN, JJ., concur.