THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WALTER ROCKAMANN, Defendant-Appellant.

Fifth District   No. 79-202

Opinion filed December 5, 1979.

Paul M. Storment, Jr., of Storment and Stegmeyer, of Belleville, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Gary L. Cobe, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Defendant was charged by indictment with four counts of indecent liberties with a child. After a bench trial, defendant was found guilty of two of the four charges and was sentenced to two concurrent 15-year prison terms. On appeal, defendant contends (1) that the trial court erred in finding him competent to stand trial; (2) that the trial court erred in finding that he possessed the requisite mental capacity to commit the alleged crimes; and (3) that the trial court erred in ruling on certain evidentiary objections. For the following reasons we disagree and affirm the judgment of the trial court.

Defendant was accused of taking indecent liberties with his 10-year-old daughter. The occurrence of these incidents, the sordid details of which need not be recounted, was never disputed. The indictment focused on the events of December 24, 1977, and July 7, 1978, although the evidence showed that such happenings had transpired for over a year prior to a criminal complaint being filed on July 21, 1978.

On September 1, 1978, defense counsel filed a "Petition to Hold Competency Hearing" pursuant to section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1). The trial court granted the petition. The court also granted the State's motion to have defendant examined by Dr. Peter Heinbecker, a psychiatrist, which examination was held on October 20 and 25, 1978. The fitness hearing was held on November 21, 1978.

The State's only witness at the hearing was Dr. Heinbecker. He testified that after approximately three hours of interviews, he determined

that defendant's I.Q. was 84, placing him on the borderline of mental retardation, since 85 is the low level of normal functioning. He also diagnosed the defendant as having chronic depression and possibly a drug or alcohol problem.

Dr. Heinbecker admitted that it was difficult to obtain a medical history from defendant, that defendant's general fund of knowledge was poor, that he did not know the capital or president of the United States, that he could spell "dog" but not "cat", that he could read and write only the simplest of sentences, that he had difficulty in understanding some of the questions on the I.Q. test, and that he could not interpret simple proverbs. Dr. Heinbecker also stated that chronic depression such as defendant's could affect one's memory and ability to concentrate, and that this could affect one's ability to cooperate with counsel. But he testified that he did not feel defendant was experiencing significant depression at the time of the interview. Furthermore, he felt that defendant had a certain degree of past paranoia and that this too could affect one's ability to cooperate with counsel. But Dr. Heinbecker did not find the paranoia present at the time of his interviews of defendant.

Nonetheless, Dr. Heinbecker rendered an opinion that defendant was fit to stand trial because he understood the nature of the charges against him and could assist his attorney with his defense. He did not feel defendant's fund of knowledge was so inadequate that he did not understand the criminal situation he was involved in. This was so because defendant cooperated with him during the interviews, admitted that he "shouldn't have been messing with her [his daughter]," and admitted having sexual relations with her. Finally, Dr. Heinbecker opined that defendant was not so depressed that he was out of touch with reality.

The defense's only witness at the fitness hearing was Dr. Julius Clyne, a board-certified psychiatrist, who was defendant's treating physician. Dr. Clyne generally testified in accordance with Dr. Heinbecker as to defendant's borderline mental retardation, informational inability, depression and paranoia. However, he disagreed with the method by which Dr. Heinbecker administered the I.Q. test, stated that defendant could not read or write, opined that defendant had a more severe depression than Dr. Heinbecker hypothesized, believed that defendant's paranoia possibly involved schizophrenia, and stated that defendant was so nonfunctional and had such severe mental illness that he was not competent to stand trial.

After Dr. Clyne had first interviewed defendant on July 22, 1978, the day after the criminal complaint was issued against defendant and he was arrested, defendant was hospitalized for a period of approximately 2½ weeks. He was treated with medication which, in Dr. Clyne's opinion, was helping to bring his depression to a partial remission. Dr. Clyne last

saw defendant before the hearing on October 12, 1978, and stated that he was "very, very nice, like a little boy about four years old." Yet he did mention that defendant knew he had charges pending against him and he was "very, very anxious and very uptight" about his court appearance. Still, Dr. Clyne testified that defendant was not capable of understanding the nature of the proceedings against him or assisting his own defense.

The trial court found defendant fit to stand trial and a bench trial was held on March 19 and 20, 1979. Defendant's daughter testified that she did not inform anyone of the events in question at first because the defendant told her not to and she was scared. Finally, however, she informed her mother, who did nothing for over one year but keep a record of the episodes in pocket calendars, based on the complaints of her daughter and her actual witnessing numerous incidents. The mother finally went to the police because she said she was afraid her daughter might become pregnant. Doctors Heinbecker and Clyne testified in accordance with their testimony at the fitness hearing. However, as to the defense of insanity, Dr. Clyne testified that defendant suffered from a mental defect, probably schizophrenia, which caused him to lack substantial capacity to either appreciate the criminality of his conduct or to conform his conduct to the law, while Dr. Heinbecker testified to the contrary.

After the testimony was completed, the trial court took the case under advisement. On March 31, 1979, the trial court found defendant guilty of the first two counts of the indictment. Defendant was found not guilty on the other two counts. Defendant was sentenced as aforesaid on April 27, 1978, and from that final judgment defendant appeals.

Appellant first contends that he was not competent to stand trial and that the trial court erroneously found otherwise. Section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1) defines fitness to stand trial and procedures to be followed in making that determination. Section 5—2—1(a) provides:

"(a) For the purposes of this Section a defendant is unfit to stand trial or be sentenced if, because of a mental or physical condition, he is unable:

(1) to understand the nature and purpose of the proceedings against him; or

(2) to assist in his defense."

Pursuant to section 5—2—1(b), the question of defendant's fitness may be raised at any point in the proceedings by either party or by the court. But section 5—2—1(c) requires that: "When a bona fide doubt of defendant's fitness to stand trial or be sentenced is raised, the court shall order that a determination of that question be made before further proceedings."

■■ This statutory procedure was followed in the present case. Defense counsel filed a petition to hold a competency hearing based on the two

aforesaid grounds. The trial court apparently felt a bona fide doubt of the defendant's fitness existed and ordered a hearing. This was its responsibility (*People v. Fontaine* (1975), 28 Ill. App. 3d 450, 328 N.E.2d 685), which the trial court exercised diligently by complying with the State's request to appoint a qualified expert to examine the defendant and to testify regarding his fitness, pursuant to section 5—2—1(g) of the Unified Code of Corrections. The question of whether such a bona fide doubt exists lies within the sound discretion of the trial court (*People v. Morthole* (1977), 51 Ill. App. 3d 919, 366 N.E.2d 606; *People v. Willis* (1978), 64 Ill. App. 3d 737, 381 N.E.2d 799), and such determination will be accorded great weight by an appellate court absent a clear showing of abuse of discretion. *People v. Nesbitt* (1977), 49 Ill. App. 3d 533, 364 N.E.2d 553; *People v. Willis* (1978), 64 Ill. App. 3d 737, 740.

■■ The nature, extent and effect of defendant's disabilities, namely, his borderline mental retardation, minimum general fund of knowledge, paranoia and depression, were disputed by the two experts. However, we find persuasive on the issue of fitness the testimony of Dr. Heinbecker that appellant admitted having sexual relations with his daughter and that he "shouldn't have been messing with her." This evidence was supported by Dr. Clyne's testimony that appellant knew he had criminal charges pending against him and he was "anxious" and "uptight" over his court appearance. Both experts also testified that he cooperated with them during their interviews and tests.

■■ We note that it has long been the law in Illinois that suffering from a psychiatric disturbance does not in and of itself render a defendant unfit to stand trial, for one can be fit to stand trial although his mind may otherwise be unsound or defective. (*People v. Murphy* (1978), 72 Ill. 2d 421, 432-33, 381 N.E.2d 677; *Withers v. People* (1961), 23 Ill. 2d 131, 135-36, 177 N.E.2d 203; *People v. Fleming* (1977), 47 Ill. App. 3d 755, 761, 362 N.E.2d 691; *People v. King* (1964), 50 Ill. App. 2d 421, 426-27, 200 N.E.2d 411.) We also recognize that the trial court was in a superior position to observe these witnesses as well as the defendant and to evaluate his behavior and ability to understand the proceedings and cooperate with counsel. (*Murphy; Willis.*) Where, as in the present case, there was sufficient evidence adduced by the State to prove by a preponderance of the evidence that defendant was fit to stand trial (*People v. Hancock* (1978), 59 Ill. App. 3d 596, 375 N.E.2d 909; *People v. McCullum* (1977), 66 Ill. 2d 306, 314, 362 N.E.2d 307), the trial court did not abuse its discretion in so finding.

■■ Appellant contends that an unexplainable inconsistency exists where he was found competent to stand trial but a confession he made was suppressed on the basis that he did not knowingly understand and waive his *Miranda* rights. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d

694, 86 S. Ct. 1602.) Appellant construes the basis of the court's ruling on the suppression motion as being that he was incompetent to make a confession and that if he was so incompetent, he was also unfit to stand trial. Even if we assume *arguendo* the veracity of appellant's interpretation of the trial court's ruling, the State correctly notes that the standards to be met for determining fitness and the admissibility of a confession are quite different. The fitness standards have been set forth above. In determining whether a confession is admissible, we have stated the following:

> "The test which governs the admission of a confession by an accused is usually stated as whether or not the statement 'has been made "freely, voluntarily and without compulsion or inducement of any sort," or whether the defendant's will was overborne at the time he confessed. [Citations.]' (*People v. Hester*, 39 Ill. 2d 489, 497, 237 N.E.2d 466 [*cert. dismissed* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408].) Voluntariness in this context is to be determined from the totality of the circumstances. (*People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied*, 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Consideration must therefore be given to both the characteristics of the accused and the details of the interrogation. [Citations.]" (*People v. Stone* (1978), 61 Ill. App. 3d 654, 659, 378 N.E.2d 263.)

As can be seen, these two criteria contrast strikingly. A finding of unfitness under one test does not mandate such a conclusion under the other, and therefore no error was committed by the trial court.

■■■ The State argues that we should not reach the merits of appellant's first assignment of error because the matter of fitness was waived by his failure to file a post-trial motion. However, we find such a contention illogical. If the mainstay of fitness to stand trial is that "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial" as a matter of fundamental due process (*Drope v. Missouri* (1975), 420 U.S. 162, 171, 43 L. Ed. 2d 103, 113, 95 S. Ct. 896, 903), then it would be ludicrous to hold that one who was unfit to stand trial but who was nevertheless tried and convicted could not appeal on the ground that his trial was void *ab initio*. Such fallacious argument is of the sort which the Illinois Supreme Court criticized in *People v. Bender* (1960), 20 Ill. 2d 45, 53-54, 169 N.E.2d 328, when it discussed the unconstitutionality of placing the burden of proof of unfitness on the defendant rather than on the State:

> "Let us assume that defendant is in fact unable to cooperate with counsel and present his case in a rational manner. It would be a strange rule, indeed, to impose upon him the burden of proving his

own incompetence, for the very disability which he would be seeking to prove renders him incapable, either logically or legally, of sustaining the burden of proof."

To burden a criminal defendant with a result which violates due process would fly in the face of that body of law to which we so often make reference: Plain errors and defects which affect substantial rights in general, and which deprive the accused of substantial means of enjoying a fair trial in particular, will be noticed even if for the first time on appeal. (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a); *People v. Howell* (1975), 60 Ill. 2d 117, 121, 324 N.E.2d 403; *People v. Richardson* (1977), 49 Ill. App. 3d 170, 172, 363 N.E.2d 924.) Surely nothing could deprecate a defendant's substantial rights more than to be tried when he was not fit to stand trial in the first place. And to deny a defendant the right to make such a plea on appeal, even if we find it ultimately to be without merit, would be a travesty of justice. Therefore, no such waiver argument as is posed by the State will be entertained.

■■ Appellant next contends that the trial court erred in finding that he possessed the necessary mental capacity to commit the alleged crimes. In other words, he asserts the affirmative defense of insanity and argues that the State did not meet its burden of proving him sane beyond a reasonable doubt as an element of the offenses charged. Insanity is defined as "the lack of a substantial capacity either to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of the law as a result of mental disorder or mental defect." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—1—11.) One is not responsible for his criminal acts if at the time of those acts he was insane. (Ill. Rev. Stat. 1977, ch. 38, par. 6—2.) This latter statute "adopts the position of earlier tests that either an impairment of cognition or an impairment of volitional capacity may prevent an individual from conforming his actions to the requirements of the law and therefore give rise to a defense of insanity." *People v. Spears* (1978), 63 Ill. App. 3d 510, 516, 380 N.E.2d 423.

■■ Whether or not defendant was insane at the time of the offense is a question for the trier of fact, and that decision will not be reversed by an appellate court unless it is so manifestly contrary to the weight of the evidence as to indicate that the verdict was based on passion or prejudice. (*People v. Ford* (1968), 39 Ill. 2d 318, 321, 235 N.E.2d 576; *People v. Muniz* (1964), 31 Ill. 2d 130, 136-37, 198 N.E.2d 855.) While both psychiatrists found evidence of some mental disorder, they were diametrically opposed in their opinions as to whether appellant could understand the nature and quality of his actions and was able to control his behavior. However, there was testimony that appellant admitted the acts with his daughter, stated he "shouldn't have been messing with her," knew he was in trouble and was "anxious" and "uptight" over his

forthcoming court appearances. That the trial court took this testimony and chose to accept one expert's opinion over another's is within the realm of discretion bestowed upon the trier of fact.

■■ We are not persuaded that Dr. Clyne's opinion should be afforded more weight as a matter of course simply because he was the treating psychiatrist and had more contact with appellant than did the State's expert, Dr. Heinbecker. Nor is it necessarily persuasive that Dr. Clyne examined appellant closer to the time of the alleged crimes than did Dr. Heinbecker. These are merely factual details which are marshalled by each expert in support of his opinion and which are weighed by the trier of fact. (*People v. Burress* (1971), 1 Ill. App. 3d 17, 20, 272 N.E.2d 390; *People v. Spears* (1978), 63 Ill. App. 3d 510, 518.) That we might reach a different conclusion under the same evidence is of little import. The trier of fact is free to accept or not the conclusions of psychiatrists based on the testimony presented. (*People v. Greenfield* (1975), 30 Ill. App. 3d 1044, 333 N.E.2d 36; *People v. Harrington* (1974), 22 Ill. App. 3d 938, 317 N.E.2d 161.) There was sufficient support given by Dr. Heinbecker for his conclusion that appellant could appreciate and control his conduct. His testimony was that appellant was cooperative during the interviews, attempted to answer his questions, had some command of reading and writing, had the rudimentary know-how to run a junkyard business and was not so out of touch with reality as to be considered insane. Given this testimony, we believe appellant was proved sane beyond a reasonable doubt.

Appellant also contends that it was inconsistent for the trial court to suppress his confession but find him to be sane. This argument is clearly without merit. The standards for the admissibility of a confession and for the insanity defense have been set forth above. Clearly the elements and concerns of each are vastly different. The trial court committed no error.

Appellant finally contends that the trial court erroneously allowed his wife to testify regarding a prior inconsistent statement she made to the police and with respect to the record of the alleged incidents she kept in pocket calendars, as well as erred in admitting those calendars into evidence. While objections to these episodes were made at trial, the State notes that appellant filed no post-trial motion.

■■ However, we find these evidentiary contentions harmless error at best. This evidence was merely corroborative of that which had already been presented. The daughter testified as to the occurrence of certain acts and the manner of their perpetration. The defendant never denied the occurrence of these acts, but rather defended on the grounds of insanity. The trial court held this girl's testimony to be clear and convincing, and as such it was sufficient to support a conviction without more. (*People v. Mueller* (1954), 2 Ill. 2d 311, 313-14, 118 N.E.2d 1; *People v. Falk* (1970),

121 Ill. App. 2d 1, 6, 257 N.E.2d 175.) Moreover, her testimony was substantially corroborated by Dr. Vilas Katty, the director of emergency services at St. Elizabeth's Hospital in Belleville, who examined the girl at the behest of the police. In short, he found evidence of sexual activity. We find that the daughter's clear and convincing testimony was substantially corroborated by Dr. Katty's testimony and, therefore, the conviction should be affirmed. (*People v. Long* (1977), 55 Ill. App. 3d 764, 370 N.E.2d 1315.) Any evidence which appellant's wife contributed was merely cumulative and it is clear beyond a reasonable doubt that any such testimony or evidence did not influence the trial court's decision. For the foregoing reasons the judgment of the circuit court of St. Clair County is affirmed.

Judgment affirmed.

JONES, P. J., and KASSERMAN, J., concur.